IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AARON ARAGON and
MARLO ARAGON,

       Plaintiffs,

vs.                                           No. CIV 10-0563 JB/RHS

THE SAN JOSE DITCH ASSOCIATION,
AUGUSTINE GARCIA, individually and
in his official capacity, ARNOLD TRUJILLO,
individually and in his official capacity,
and DARRELL HERRERA, individually and
in his official capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Disqualify Peter T. White as Co-Counsel for Defendants, filed April 28, 2011 (Doc. 36)("Motion to Disqualify"). The Court held a hearing on August 23, 2011. The primary issues are whether: (i) the Court should exercise its discretion and disqualify Mr. White as co-counsel for the Defendants because he is a necessary expert witness for the Plaintiffs; and (ii) the Court should disqualify Mr. White because he is a necessary fact witness. The Court, after careful review of the record and the parties' arguments, will deny the Plaintiffs' Motion to Disqualify Peter T. White as Co-Counsel for Defendants.

## FACTUAL BACKGROUND

Defendant San Jose Ditch Association and its officers, Defendants Augustine Garcia, Arnold Trujillo, and Darrell Herrera, contend that, on or about 1939, Lino Sanchez, who owned a parcel of land with water rights off the San Jose Ditch, near Ledoux, New Mexico, incurred and did not pay

delinquencies to the Ditch Association, and thereby forfeited his water rights and ditch membership. <u>See</u> First Amended Complaint ¶¶ 13, 15, at 3-4, filed July 17, 2011 (Doc. 52). Tony Aragon purchased the property in 1962 and, on multiple occasions thereafter, attempted to pay any outstanding delinquencies, but the Ditch Association refused payment. <u>See</u> First Amended Complaint ¶ 21(x), at 10. Plaintiffs' predecessor-in-interest, T. Aragon, irrigated the parcel from 1962 to 2003. <u>See</u> First Amended Complaint ¶ 21(ee), at 7.

In 1981, the Ditch Association passed its first formal set of by-laws. <u>See</u> First Amended Complaint ¶ 21(z), at 10. The Ditch Association provided the by-laws to the State Engineer, and asked the State Engineer to review, and to provide advice on, the by-laws, including the provision on delinquencies. <u>See</u> First Amended Complaint ¶ 21(aa), at 10-11; Transcript of Hearing at 12:24-13:1 (August 23, 2011)("Tr.")(Ode).[1] Peter White, the Defendants' co-counsel, worked for the State Engineer in 1981, reviewed the Ditch Association's by-laws, and wrote a memorandum on February 23, 1981 to John Nixon, an engineer in the State Engineer's Water Rights Bureau, summarizing his evaluation of the Ditch Association's by-laws. <u>See</u> Peter T. White Memorandum at 3 ("White Memorandum")(Doc. 36-2); Tr. 18:21-19:8 (White). On February 24, 1981, Nixon sent a letter to the Ditch Association advising the Ditch Association about the State Engineer's role in delinquencies and forfeiture of water rights. <u>See</u> White Memorandum; Letter from J. B. Nixon to the Ditch Association (dated February 24, 1981), filed June 2, 2011 (Doc. 40-1)("1981 Letter"). The State Engineer also provided the Ditch Association with copies of and comments on relevant statutory provisions. <u>See</u> First Amended Complaint ¶ 21(aa), at 10-11.

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

A. and M. Aragon purchased the parcel in 2003.  See First Amended Complaint ¶ 13, at 3. Plaintiffs irrigated the parcel from 2003 until 2009, when the Defendants ordered A. and M. Aragon to stop irrigating the parcel.  See First Amended Complaint ¶ 21(ee), at 7.

## PROCEDURAL BACKGROUND

A. and M. Aragon filed their original Complaint against the Ditch Association and three of its officers, alleging that the Defendants violated A. and M. Aragon's constitutional rights by depriving A. and M. Aragon of their property interest in their water rights.  See Complaint ¶¶ 25-59, at 9-11, filed June 11, 2010 (Doc. 1).  A. and M. Aragon later amended their Complaint.  See First Amended Complaint, filed July 19, 2011 (Doc. 52).

A. and M. Aragon served their First Supplemental Disclosures on March 30, 2011, identifying Peter T. White, one of the Defendants' counsel, as a fact and non-retained expert witness. See Motion to Disqualify at 2.  A. and M. Aragon expected Mr. White to testify to his role and communications in 1981 in evaluating the Ditch Association by-laws and various aspects of New Mexico law regarding ditch commissioner rights and responsibilities, and water rights abandonment and forfeiture.  See Motion to Disqualify at 2.  A. and M. Aragon's counsel decided to designate Mr. White as a witness before she knew Mr. White would be representing the Defendants.  See Tr. at 13:23-14:5 (Ode).  Fred Waltz, the Defendants' other counsel, and Mr. White discussed Mr. White serving as co-counsel for the Defendants a long time before Mr. White entered his appearance.  See Tr. at 16:6-10 (Waltz).  At the hearing, Mr. Waltz stated that he believed that Mr. White may have advised A. and M. Aragon's counsel that Mr. White might enter his appearance.  See Tr. at 16:11-13 (Waltz).  Mr. Waltz added that he would "leave that to Mr. White to clarify that."  Tr. at 16:13 (Waltz).  Mr. White did not clarify whether he advised A. and M. Aragon's counsel that he might

enter his appearance.  See Tr. at 18:15-22:16 (White).  On the same day that A. and M. Aragon served their First Supplemental Disclosures identifying Mr. White as their fact and expert witness, Mr. White entered his appearance as co-counsel on behalf of the Defendants.  See Entry of Appearance, filed March 30, 2011 (Doc. 35).

A. and M. Aragon filed this motion to disqualify Mr. White as co-counsel for the Defendants, citing the Court's inherent power to preserve the integrity of the adversary process and the New Mexico Rules of Professional Conduct.  See Motion to Disqualify at 3.  A. and M. Aragon argue that Mr. White is a necessary witness, that his testimony relates to a contested issue, and that disqualification of Mr. White will not work a substantial hardship on the Defendants.  See Motion to Disqualify at 4-6.  A. and M. Aragon contend that only Mr. White can testify regarding: (i) his communications with, (ii) his opinions and recommendations to, the Ditch Association in 1981, and whether he drafted the February 24, 1981 Letter and (iii) whether the 1981 Letter provided any additional legal conclusions reflected on page one.[2]  See Motion at 4-5.

The Defendants responded on May 16, 2011.  See Defendants' Response to Motion to Disqualify Peter T. White as Co-counsel for Defendants, filed May 16, 2011 (Doc. 37)("Response").  The Defendants argue that Mr. White's testimony as a fact witness is not necessary, because the Defendants are willing to stipulate that he authored the February 23, 1981 memorandum referenced by and enclosed with the February 24, 1981 letter.  See Response at 1-2.  The Defendants also argue that Mr. White's testimony as an expert witness is not necessary, because the Defendants are willing

---

[2]A. and M. Aragon apparently thought that they had only the first page of a multi-page letter, because the bottom of the letter did not have a closing and signature.  See Letter to Mr. Louis E. Lucero, (dated February 24, 1981), filed April 28, 2011 (Doc. 36-2).  A. and M. Aragon attached a complete copy of the letter to their Reply, which shows a closing and signature at the bottom of the first page.  See 1981 Letter.

to stipulate to several quotations in the February 24, 1981 letter as undisputed factual and legal conclusions.  <u>See</u> Response at 2.  The Defendants contend that the First Amended Complaint fails to distinguish between forfeiture of water rights and forfeiture of ditch rights.  <u>See</u> Response at 3-4. The Defendants also contend that the First Amended Complaint "does not request the court to adjudicate the nature or extent of the Plaintiffs' water rights" or "rely on any judicial determination of [the Plaintiffs'] water rights by a New Mexico Court," and that "[o]ne or the other is a necessary predicate for this court's jurisdiction to determine whether the Defendants have deprived the Plaintiffs of 'their constitutionally protected property rights' in water."  Response at 3.  The Defendants conclude that the only contested issue properly before the Court is whether A. and M. Aragon have acquired ditch rights, and not water rights.  <u>See</u> Response at 4.

A. and M. Aragon replied on June 2, 2011.  <u>See</u> Plaintiffs' Reply to Defendants' Response to Motion to Disqualify Peter T. White as Co-counsel for Defendants, filed June 2, 2011 (Doc. 40) ("Reply").  A. and M. Aragon argue that the Defendants' proposed stipulations are not sufficient to render Mr. White's testimony unnecessary.  <u>See</u> Reply at 2-4.   A. and M. Aragon state that, in addition to the proposed stipulations, they would "explore with Mr. White the specific bases for his opinions (as reflected in the stipulations), how those opinions apply to the facts of the present case, and the extent to which Defendants' conduct is consistent or inconsistent with those opinions" and about "facts and issues *beyond* those addressed by the stipulations."  Reply at 2 (emphasis in original).

The Court held a hearing on August 23, 2011.  <u>See</u> Clerk's Minutes, filed August 23, 2011 (Doc. 61).  The Court expressed its concern whether Mr. White could be compelled to testify as an unretained expert witness.  <u>See</u> Tr. at 2:20-3:20 (Court).  The Court asked A. and M. Aragon's

counsel if it was fair to say that Mr. White is really not an expert in this case, and if A. and M. Aragon's counsel was trying to call Mr. White as a fact witness. <u>See</u> Tr. at 6:18-20 (Court). A. and M. Aragon's counsel responded: "Yes, but the fact that he's going to be testifying to relates to a lot of legal conclusions and statutes. And perhaps out of an abundance of caution we designated him as a nonretained expert, but he will be testifying as to his legal conclusions that he made." <u>See</u> Tr. at 6:21-25 (Ode). A. and M. Aragon's counsel also indicated that they were probably going to ask Mr. White for his opinions on some hypothetical questions. <u>See</u> Tr. at 24:16-19 (Ode).

The Court asked A. and M. Aragon's counsel if Mr. White stipulated to everything in Mr. White's February 23, 1981 memorandum and Mr. Nixon's February 24, 1981 letter, would A. and M. Aragon still need Mr. White as a witness. <u>See</u> Tr. at 8:6-9 (Court). A. and M. Aragon's counsel responded that she would ask Mr. White whether the Ditch Association followed Mr. White's advice and the questions listed in her Reply. <u>See</u> Tr. at 9:1-10:19 (Ode, Court). Later in the hearing, Mr. White stated that he has no recollection how the Ditch Association responded to his memorandum or any understanding whether the Ditch Association followed the advice in his memorandum. <u>See</u> Tr. at 21:9-15 (White).

The Court also inquired into the substance of Mr. White's expected testimony as a fact witness given that his involvement with the Ditch Association occurred approximately 30 years ago. <u>See</u> Tr. at 3:21-4:9 (Court). Mr. White briefly described the "routine practice" of requiring ditch associations to submit their by-laws for review by the State Engineer's Office. Tr. at 18:21-19:13 (White). He stated that the State Engineer's Office would advise the ditch associations what changes they should make to their by-laws, and why the State Engineer's Office thought the by-laws were not consistent with the statutory rules governing ditch associations. <u>See</u> Tr. at 18:21-19:13

(White).  Other than reviewing the Ditch Association's by-laws, Mr. White did not recall being

involved with the Ditch Association or any correspondence or communications with the Ditch

Association.  <u>See</u> Tr. at 19:14-24 (White).

### LAW REGARDING FEDERAL COURTS' INHERENT POWERS

The Supreme Court of the United States has recognized that "'[c]ertain implied powers must

necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot

be dispensed with in a Court, because they are necessary to the exercise of all others.'"  <u>Chambers</u>

<u>v. NASCO, Inc.</u>, 501 U.S. 32, 43 (1991)(quoting <u>United States v. Hudson</u>, 11 U.S. (7 Cranch) 32

(1812)).  "For this reason, 'Courts of justice are universally acknowledged to be vested, by their very

creation, with power to impose silence, respect, and decorum, in their presence, and submission to

their lawful mandates.'" <u>Chambers v. NASCO, Inc.</u>, 501 U.S. at 43 (quoting <u>Anderson v. Dunn</u>, 19

U.S. (6 Wheat.) 204, 227 (1821)).  "These powers are 'governed not by rule or statute but by the

control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases.'" <u>Chambers v. NASCO, Inc.</u>, 501 U.S. at 43 (quoting <u>Link v.</u>

<u>Wabash R. Co.</u>, 370 U.S. 626, 630-31 (1962)).  A court's inherent powers must be exercised with

restraint and discretion because "of their very potency." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. at 44

(citing <u>Roadway Exp., Inc. v. Piper</u>, 447 U.S. 752, 764 (1980)).  "The authority of federal courts to

disqualify attorneys derives from their inherent power to preserve the integrity of the adversary

process." <u>Hempstead Video, Inc. v. Inc. Vill. of Valley Stream</u>, 409 F.3d 127, 132 (2d Cir. 2005).

### LAW REGARDING THE NEW MEXICO RULES OF PROFESSIONAL CONDUCT

Two sources of authority govern motions to disqualify:

First, attorneys are bound by the local rules of the court in which they appear.
Federal district courts usually adopt the Rules of Professional Conduct of the states

where they are situated. Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law.

Cole v. Ruidoso Mun. Schs., 43 F.3d 1373, 1383 (10th Cir. 1994). The local rules for the United States District Court for the District of New Mexico state: "The Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court Order." D.N.M. LR-Civ. 83.9. The Court will therefore apply the New Mexico Rules of Professional Conduct.

Rule 16-307 of the New Mexico Rules of Professional Conduct states:

A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
 (1) the testimony relates to an uncontested issue;
 (2) the testimony relates to the nature and value of legal services rendered in the case; or
 (3) disqualification of the lawyer would work substantial hardship on the client.

Rule 16-307(A) N.M.R.A. The Committee Commentary elaborates on subparagraph (3) of rule 16-307 of the New Mexico Rules of Professional Conduct. It states:

Subparagraph (3) of Paragraph A recognizes that a balancing is required between the interests of the client and those of the tribunal and the opposing party. Whether the tribunal is likely to be misled or the opposing party is likely to suffer prejudice depends on the nature of the case, the importance and probable tenor of the lawyer's testimony and the probability that the lawyer's testimony will conflict with that of other witnesses. Even if there is risk of such prejudice, in determining whether the lawyer should be disqualified due regard must be given to the effect of disqualification on the lawyer's client. It is relevant that one or both parties could reasonably foresee that the lawyer would probably be a witness.

Rule 16-307(A) N.M.R.A. Committee Commentary.

## LAW REGARDING DISQUALIFICATION OF A LAWYER AS WITNESS

A party has a right to be represented by an attorney of his or her own choosing; however, that

right is not absolute.  See Sanders v. Rosenberg, 122 N.M. 692, 694, 930 P.2d 1144, 1146 (1996).

The Court may reject a party's chosen counsel if a compelling reason exists that supports the

disqualification of counsel.  See Sanders v. Rosenberg, 122 N.M. at 694, 930 P.2d at 1146.  The

Court is entitled to exercise its discretion to disqualify a party's choice of counsel when the counsel

is a necessary witness under rule 16-307 of the New Mexico Rules of Professional Conduct.  See

Sanders v. Rosenberg, 122 N.M. at 694, 930 P.2d at 1146.

The Supreme Court of New Mexico has stated that the party seeking disqualification has the

burden of establishing the necessity of an attorney's testimony as a witness at trial holding:

> [A]n attorney may not be disqualified under Rule 16-307 absent a showing by the
> party seeking disqualification that the attorney's testimony is material to an issue in
> the case, that the evidence to be elicited from the attorney's testimony is not
> available from another source, and that the attorney's testimony is potentially
> prejudicial to his client's case.[3]

Chappell v. Cosgrove, 121 N.M. 636, 640, 916 P.2d 836, 840 (1996).

## LAW REGARDING COMPULSION OF EXPERT TESTIMONY

---

[3]The Supreme Court of New Mexico amended rule 16-307 after it entered its holding in
Chappell v. Cosgrove.  When the Supreme Court of New Mexico entered its ruling in Chappell v.
Cosgrove, rule 16-307 of the Supreme Court Rules of Professional Conduct stated:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a
> necessary witness except where:
>    (1)  the testimony relates to an uncontested legal issue; or
>    (2)  the testimony relates to the nature and value of legal services rendered
>         in the case.

Rule 16-307(A) S.C.R.A. 1986 (Repl. Pamp. 1995).

Although unretained experts have no privilege to refuse to be a witness for a party,[4] the Court may consider several factors to determine whether to excuse an unretained expert from testifying. Rule 501 of the Federal Rules of Evidence states the general rule for privileges:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

Fed. R. Evid. 501. "[T]here is no constitutional or statutory privilege against the compulsion of expert testimony, and we perceive no sufficient basis in principle or precedent for holding that the common law recognizes any general privilege to withhold his expert knowledge." Kaufman v. Edelstein, 539 F.2d 811, 820 (2d Cir. 1976). See Ager v. Jane C. Stomont Hosp. and Training Sch. for Nurses, 622 F.2d 496, 503 n.6 (10th Cir. 1980)(citing Kaufman v. Edelstein, but not deciding the propriety of attempting to compel testimony from an expert retained by an adverse party whom the adverse party does not intend to call; holding that the identity, and other collateral information, concerning an expert who is consulted, but not expected to testify is not discoverable). But see Glenn v. Plante, 269 Wis.2d 575, 589, 676 N.W.2d 413, 420 (2004) (concluding that Wisconsin statute, stating that the court may not appoint an expert witness unless the expert witness consents to act, implicitly provides that an expert witness has the privilege to refuse to testify if he or she is called by a litigant). After noting that some jurisdictions will not compel an expert whom an

---

[4]Rule 706(a) of the Federal Rules of Evidence states: "An expert witness shall not be appointed by the court unless the witness consents to act."

adversary had initially consulted to appear as a witness while other courts apply the rule favoring

testimonial compulsion to all experts, the Supreme Court of New Jersey stated:

> Thus, in <u>Kaufman v. Edelstein</u>, in which the government subpoenaed renowned
> computer-system consultants to express their expert opinions concerning market
> monopoly of electronic data processing, the Court of Appeals stated that no
> justification exists for a "rule that would wholly exempt experts from placing before
> a tribunal factual knowledge relating to the case in hand * * *." Such rulings create
> the anomaly that although a party cannot depose an adversary's non-testifying
> expert, a court can compel the witness to testify at trial.

<u>Graham v. Gielchinsky</u>, 126 N.J. 361,  368-371, 599 A.2d 149, 153-155 (1991)(alteration in

original)(citations omitted)(holding that, in the absence of exceptional circumstances, courts should

not allow opinion testimony of an expert who was originally consulted by the opposing party).

New Mexico state law also does not provide a privilege against the compulsion of expert

testimony.  Rule 11-501 of the New Mexico Rules of Evidence states: "Except as otherwise

provided by constitution, and except as provided in these rules or in other rules adopted by the

supreme court, no person has a privilege to: A.  refuse to be a witness . . . ." Rule 11-501 N.M.R.A.

The New Mexico Rules of Evidence provide only the following privileges: required reports

privileged by statute, <u>see</u> Rule 11-502 N.M.R.A., lawyer-client, <u>see</u> Rule 11-503 N.M.R.A.,

physician-patient and psychotherapist-patient, <u>see</u> Rule 11-504 N.M.R.A., husband-wife, <u>see</u> Rule

11-505 N.M.R.A., communications to clergy, <u>see</u> Rule 11-506 N.M.R.A., political vote, <u>see</u> Rule

11-507 N.M.R.A., trade secrets, <u>see</u> Rule 11-508 N.M.R.A., communications to juvenile probation

officers and social services workers, <u>see</u> Rule 11-509 N.M.R.A., identity of informer, <u>see</u> Rule 11-

510 N.M.R.A., and news media-confidential source or information, <u>see</u> Rule 11-514 N.M.R.A.

Despite the lack of a privilege to refuse to be a witness, courts will not always require

unretained experts to testify.  Rule 45 of the Federal Rules of Civil Procedure provides that, to

protect a person subjected to a subpoena, the Court may quash or modify the subpoena if it requires

"disclosing an unretained expert's opinion or information that does not describe specific occurrences

in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P.

45(c)(3)(B)(ii).  "Clause (c)(3)(B)(ii) provides appropriate protection for the intellectual property

of the non-party witness." Fed. R. Civ. P. 45 advisory committee's note (1991 Amendment).  The

advisory committee explains the need for clause (c)(3)(B)(ii) stating:

> A growing problem has been the use of subpoenas to compel the giving of evidence and information by unretained experts.  Experts are not exempt from the duty to give evidence, even if they cannot be compelled to prepare themselves to give effective testimony, but compulsion to give evidence may threaten the intellectual property of experts denied the opportunity to bargain for the value of their services.  Arguably the compulsion to testify can be regarded as a "taking" of intellectual property.  The rule establishes the right of such persons to withhold their expertise, at least unless the party seeking it makes the kind of showing required for a conditional denial of a motion to quash as provided in the final sentence of subparagraph (c)(3)(B);[5] that requirement is the same as that necessary to secure work product under Rule 26(b)(3).

Fed. R. Civ. P. 45 advisory committee's note (1991 Amendment) (citations omitted).  When

deciding whether to excuse an unretained expert from testifying, the court may consider the

following factors:

_____

[5]The Supreme Court of the United States subsequently amended Rule 45 of the Federal Rules of Civil Procedure thereby changing the final sentence of subparagraph (c)(3)(B).  Before those amendments, the final sentence of subparagraph (c)(3)(B) stated:

> [T]he court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

Proposed Amendment of Rule 45 of the Federal Rules of Civil Procedure (1990).

[T]he degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; the difference between testifying to a previously formed or expressed opinion and forming a new one; the possibility that, for other reasons, the witness is a unique expert; the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; the degree to which the witness is able to show that he has been oppressed by having continually to testify; and, undoubtedly, many others.

Kaufman v. Edelstein, 539 F.2d 811, 822 (2d Cir. 1976).  See Chavez ex rel. Chavez v. Bd. of Educ. of Tularosa Mun. Sch., No. 05-380, 2007 WL 1306734, at * 4 (D.N.M., 2007)(Browning, J.)(quoting Kaufman v. Edelstein for factors that "should inform a court's decision whether to use its discretion to allow testimony to be compelled from an un-retained witness," and granting a motion to quash a deposition notice after noting that party seeking to depose expert has not shown that putative expert witness is a unique witness or that it is unlikely that any comparable witness will willingly testify).

## ANALYSIS

A. and M. Aragon argue that the Court should disqualify Mr. White as co-counsel for the Defendants because he is a necessary factual and expert witness.  The Defendants contend that Mr. White is not a necessary witness, because they are willing to stipulate to the facts and legal conclusions that Plaintiffs reference in their motion.  The Court concludes that Mr. White is not a necessary fact or expert witness, and will not disqualify him as co-counsel for the Defendants.

In the end, Mr. White is a lawyer who has practiced water law in New Mexico for many years.  He has an expertise.  He is largely free to sell or give away that expertise, either as a lawyer or as an expert witness, to whomever he wants.  Here, A. and M. Aragon do not want to pay for Mr. White's expertise; the Defendants are apparently willing to pay Mr. White to be their lawyer.  A. and M. Aragon cannot properly keep him from his work and trade by designating, and ultimately

-13-

subpoenaing him, as an unpaid expert witness in their case.  This case does not involve a situation, similar to that in <u>Kaufman v. Edelstein</u>, where Mr. White is the only current water law expert available.  As good as Mr. White may be, there are other water rights lawyers and experts in New Mexico.  As such, he should be able to practice law without fear of being designated as an unpaid expert by the other side.

**I.      BECAUSE HE IS NOT A NECESSARY EXPERT WITNESS, THE COURT WILL NOT DISQUALIFY MR. WHITE.**

A. and M. Aragon argue that, before Mr. White's entry of appearance, they "had designated Mr. White as a . . . non-retained expert witness" and, "[a]ccordingly, he is disqualified from serving as an advocate for Defendants pursuant to Rule 16-307 of the New Mexico Rules of Professional Conduct."  Motion to Disqualify at 1.  A. and M. Aragon designated Mr. White as an expert witness based on his "familiarity with the New Mexico water code and ditch statutes."  Motion to Disqualify at 4.  During the hearing, A. and M. Aragon's counsel stated that Mr. White's "testimony would go to establishing that the law on delinquency, the law on forfeiture and abandonment was clearly established, which goes to the issue of qualified immunity."  Tr. at 9:13-17 (Ode).  A. and M. Aragon's counsel also indicated that they "were probably going to ask [Mr. White] some hypotheticals," such as "[a]ssuming this is how the [San Jose Ditch] association responded, in your opinion, would that have been consistent with the advice that you provided them?"  Tr. at 24:16-19 (Ode).

The Defendants respond, stating that Mr. White's testimony as an expert witness is not necessary, because the Defendants are willing to stipulate to the legal conclusions to which A. and M. Aragon refer in their motion.  <u>See</u> Response at 2.  The Defendants do not dispute the following statements and "are willing to stipulate to them as undisputed factual and legal conclusions, without

agreeing to their relevancy to this case": (i) "Delinquencies in ditch dues and assessments are not matters in which the State Engineer can become involved"; (ii) "If, however, [water] rights are not exercised because of such delinquencies, the law of forfeiture of [water] rights would apply"; and (iii) "Forfeiture of a [water] right may only be determined by the courts."  Response at 2 (alterations in original).

A. and M. Aragon reply that the Defendants' proposed stipulations do not render Mr. White's testimony unnecessary.  A. and M. Aragon state that, based on the proposed stipulation, "[l]ogical and necessary inquiries to Mr. White at trial" include:

> Given that Plaintiffs (and their predecessors in interest) have not been able to exercise their water rights in this case as a result of alleged delinquencies incurred by Lino Sanchez many years ago, doesn't the law of forfeiture of water rights apply in this case?
>
> What is the law of forfeiture of water rights?
>
> How does that law apply to the facts of this case?
>
> Isn't Defendants' argument that this case involves ditch rights, not water rights, inconsistent with your opinion (and Defendants' stipulation) that the law of forfeiture of water rights applies when water rights are not exercised because of ditch delinquencies?

Reply at 3.

The Court asked Mr. White if he had any reason to think that the law or his opinion stated in his memorandum has changed.  See Tr. at 20:5-8 (Court).  Mr. White answered that the law and his opinion have not changed, stating: "Ditch associations have no power to forfeit water rights." Tr. at 20:9-16 (White).  Mr. White also indicated that, during the time he worked in the State Engineer's Office, he did not obtain knowledge of any facts related to this case except for the Ditch Association's by-laws.  See Tr. at 19:14-24 (White)(stating he does not recall any involvement with

the Ditch Association other than his review of the Ditch Association's by-laws); Tr. at 21:7:15
(White)(stating that he does not know whether the Ditch Association followed his advice).

Mr. White's testimony regarding whether certain water laws were clearly established at some
point in time is not necessary.  Should the Defendants file a motion for summary judgment based
on qualified immunity, the Court, with the assistance of the parties' briefs, will be able to determine
without Mr. White's testimony whether certain water laws were clearly established at some point
in time.  See Miller v. City of Mission, Kan., 705 F.2d 368, 375 n.6 (10th Cir. 1983)(stating
"Whether the law in question was clearly established when the conduct complained of occurred is
a legal issue to be resolved by the court.")(citing Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)).

Mr. White's expert testimony regarding hypotheticals, and whether and how the law of
forfeiture applies to this case, is also not necessary.  Mr. White informed the Court that, with the
exception of reviewing the Ditch Association's by-laws, he did not obtain any factual knowledge
relevant to this case during the time he worked for the State Engineer's Office.  A. and M. Aragon
have not shown that Mr. White is a unique witness or that it is unlikely that any comparable witness
will willingly testify.  See Kaufman v. Edelstein, 539 F.2d at 822 (listing factors courts may consider
when deciding whether to excuse an unretained expert from testifying).  The Court will not exercise
its inherent power to disqualify Mr. White as co-counsel for the Defendants.  See Chambers v.
NASCO, Inc., 501 U.S. at 44 (A court's inherent powers must be exercised with restraint and
discretion because "of their very potency.")(citing Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764
(1980)).

II.     **BECAUSE MR. WHITE IS NOT A NECESSARY FACT WITNESS, THE COURT
        WILL NOT DISQUALIFY HIM.**

A. and M. Aragon argue that, before Mr. White's entry of appearance, they "had designated

Mr. White as a fact . . . witness" and, "[a]ccordingly, he is disqualified from serving as an advocate for Defendants pursuant to Rule 16-307 of the New Mexico Rules of Professional Conduct." Motion to Disqualify at 1. A. and M. Aragon designated Mr. White as a fact witness based on his "role in 1981 in reviewing the San Jose Ditch's bylaws and advising the ditch about various aspects of the New Mexico ditch laws, including specifically the State Engineer's advice to the ditch concerning delinquencies and forfeiture of water rights" which "are two central issues in this case." Motion to Disqualify at 4. A. and M. Aragon contend that Mr. White's testimony regarding his communications with the San Jose Ditch in 1981 is necessary, because "Plaintiffs intend to show that Defendants, who claim merely to be upholding past decisions of the ditch, knew or should have known that ditch commissioners have only limited authority with respect to delinquent dues and assessments, and that only the courts can decree a forfeiture or abandonment of water rights." Motion to Disqualify at 4.

The Defendants respond that Mr. White's testimony as a fact witness is not necessary, because the Defendants are willing to stipulate that he authored the February 23, 1981 State Engineer Office memorandum to John Nixon on the by-laws of the San Jose Ditch. See Response at 1-2.

A. and M. Aragon reply that Mr. White's testimony is necessary, because the Defendants' proposed stipulation does not address or answer the following questions related to his prior involvement with the Ditch Association:

> Didn't the San Jose Ditch by-laws that you reviewed in 1981 contain a provision to the effect that '[n]o considerations were made until adviced [sic] by State Engineer's Office on water rights?'
>
> Did you discuss this provision with any representatives or members of the San Jose Ditch?

What did you understand this provision to mean?

What was the legal effect of this provision, especially in light of your memos and Mr. Nixon's letter that the State Engineer did not become involved in ditch delinquencies?

Did the San Jose Ditch revise the provision on ditch delinquencies after receiving the communications from the State Engineer?

Assuming it remained unchanged, at least for a period of years, what is the effect of this provision on the facts of this case?

Reply at 3.  A. and M. Aragon's counsel would also ask Mr. White if the Ditch Association followed his advice.  See Tr. at 8:14-9:9 (Ode).

Mr. White is not a necessary fact witness.  During the hearing, Mr. White stated that he wrote the February 23, 1981 memorandum, and that the memorandum and attachments were accurate expressions of the opinions he held at that time.  See Tr. at 19:20:4 (White).  Mr. White also stated that he does not now recall being involved with the Ditch Association before he wrote the memorandum, or any follow-up correspondence or communications with the Ditch Association. See Tr. at 19:14-24 (White).  Finally, Mr. White stated that he has no recollection how the Ditch Association responded to his memorandum or any understanding whether the Ditch Association followed the advice in his memorandum.  See Tr. at 21:9-15 (White).  Because of his lack of recall and knowledge about this matter, Mr. White's testimony would add nothing beyond what is contained in his memorandum.  Because the Defendants are willing to stipulate that Mr. White authored the February 23, 1981 memorandum, Mr. White is not a necessary fact witness.  Mr. White's putative factual testimony will provide no additional benefit to A. and M. Aragon over the information contained in his memo; consequently, the absence of his testimony will not prejudice A. and M. Aragon.  Based on his statements at the hearing regarding his experience with water law,

the Defendants could be prejudiced if the Court disqualifies Mr. White as co-counsel.  See Rule 16-307(A) N.M.R.A. Committee Commentary (in determining whether the lawyer should be disqualified, the court must weigh the interests of the client against those of the tribunal and the opposing party giving due regard to the effect of disqualification on the lawyer's client).  A. and M. Aragon have not established the necessity of Mr. White's testimony as a fact witness.  See Chappell v. Cosgrove, 121 N.M. at 640, 916 P.2d at 840 (the party seeking disqualification has the burden of establishing the necessity of an attorney's testimony as a witness at trial).  The Court will not exercise its power to disqualify Mr. White as co-counsel for the Defendants.

    **IT IS ORDERED** that the Plaintiffs' Motion to Disqualify Peter T. White as Co-Counsel for Defendants, filed April 28, 2011 (Doc. 36) is denied.  The Court will not disqualify Mr. White as co-counsel for the Defendants.

    _____
    UNITED STATES DISTRICT JUDGE

*Counsel*:

Mary E. Humphrey
Connie Ode
Humphrey & Ode, P.C.
El Prado, New Mexico

    *Attorneys for the Plaintiffs*

Peter Thomas White
Santa Fe, New Mexico

-- and --

Fred J. Waltz
Taos, New Mexico

    *Attorneys for the Defendants*

-19-