# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

AARON ARAGON and
MARLO ARAGON,

       Plaintiffs,

vs.                                                                    No. CIV 10-0563 JB/RHS

THE SAN JOSE DITCH ASSOCIATION,
AUGUSTINE GARCIA, individually and
in his official capacity, ARNOLD TRUJILLO,
individually and in his official capacity,
and DARRELL HERRERA, individually and
in his official capacity,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion for Summary

Judgment on Defendants' Counterclaim for Malicious Abuse of Process, filed August 29, 2011

(Doc. 65)("Malicious Abuse of Process Motion"); (ii) the Plaintiffs' Motion for Summary Judgment

on Plaintiffs' Equal Protection, Due Process and Takings Claims, filed August 28, 2011 (Doc.

67)("Equal Protection Motion"); and (iii) the Defendants' Motion to Dismiss Augustin Garcia,

Arnold Trujillo and Darrell Herrera in their Individual Capacities, filed September 13, 2011 (Doc.

75)("Qualified Immunity Motion").  The Court held a hearing on November 4, 2011.  The primary

issues are: (i) whether Plaintiffs Aaron and Marlo Aragon had probable cause to file this lawsuit;

(ii) whether the Defendants deprived A. and M. Aragon of their water and ditch rights; and

(iii) whether the Court should dismiss Defendants Augustine Garcia,[1] Arnold Trujillo and Darrell

---

[1]The Court notes that Defendant Augustine Garcia's name is spelled Augustin Garcia in the
Defendants' Qualified Immunity Motion.  In other documents that the Defendants' filed, his name

Herrera[2] on the basis of qualified immunity.  The Court, after careful review of the record and the parties' arguments, will: (i) grant the Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim for Malicious Abuse of Process; (ii) deny the Plaintiffs' Motion for Summary Judgment on Plaintiffs' Equal Protection, Due Process and Takings Claims; and (iii) deny the Defendants' Motion to Dismiss Augustin Garcia, Arnold Trujillo, and Darrell Herrera in their Individual Capacities.

## **FACTUAL BACKGROUND**

The material facts are largely undisputed.  The Acequia de San Jose is a community acequia. See Answer to First Amended Complaint and Counterclaim of Defendants, San Jose Ditch Association, Augustine Garcia, Arnold Trujillo and Darrell Herrera ¶ 2, at 1, filed August 18, 2011, (Doc. 56)("Answer to First Amend. Compl."); Equal Protection Motion ¶ 3, at 2 (setting forth this fact); Defendants' Response to Motion for Summary Judgment on Plaintiffs' Equal Protection, Due Process and Takings Claims at 2, filed October 7, 2011 (Doc. 89)("Equal Protection Response")(not disputing this fact).[3]  The acequia diverts water from the south side of Rio San Jose.  See Declaration

---

is spelled Augustine.  See  Answer to First Amended Complaint and Counterclaim of Defendants, San Jose Ditch Association, Augustine Garcia, Arnold Trujillo and Darrell Herrera at 1, filed August 18, 2011 (Doc. 56); Defendants' Motion to Amend Scheduling Order at 1, filed May 20, 2011 (Doc. 39).  The Court will therefore spell Mr. Garcia's name as Augustine, when the Court refers to him, except when his name is used in the title of the Qualified Immunity Motion.

[2]The Court will refer to Defendants Augustine Garcia, Arnold Trujillo, and Darrell Herrera collectively as the "Individual Defendants."

[3]D.N.M.LR-Civ. 56.1(b) states:

The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does not exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will

of Owner of Water Right #890 (executed October 3, 1939), filed August 29, 2011 (Doc. 65-2)("Declaration"); Malicious Abuse of Process Motion ¶ 4, at 2 (setting forth this fact); Defendants' Response to Motion for Summary Judgment on Defendants' Counterclaim for Malicious Abuse of Process at 1-2, filed October 7, 2011 (Doc. 90)("Malicious Abuse of Process Response")(not disputing this fact). Members of the local community constructed the acequia around 1852 to irrigate approximately 950 acres of land and to deliver water for domestic uses for about eight families. See Declaration at 1-2; Malicious Abuse of Process Motion ¶ 4, at 2 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). These uses still existed in the late 1940's. See Declaration at 2; Malicious Abuse of Process Motion ¶ 4, at 2 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact).

The Acequia de La Isla, or the La Isla ditch, shares water from the Rio San Jose with the San Jose ditch. See Declaration at 10; Malicious Abuse of Process Motion ¶ 5, at 2 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). Sometime before 1912, the members of the Acequia de San Jose and the Acequia de La Isla constructed ditches from the Rito Morphy, a tributary of the Rio San Jose, to Morphy Lake, also known as Murphy Lake, which is a natural lake situated in the uplands between the Rio San Jose and the Rio Santiago. See Declaration at 3-6; Malicious Abuse of Process Motion ¶ 6, at 2 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). They also constructed a low dam across the natural outlet to Morphy Lake to increase storage in the lake and created a ditch to deliver water back to the Rio San Jose. See Declaration at 5-6; Malicious Abuse of Process Motion ¶ 6, at 2

_____

be deemed undisputed <u>unless specifically controverted</u>.

D.N.M.LR-Civ. 56.1(b)(emphasis added).

(setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). A 1912 judgment entered in proceedings in Mora County apportioned the water in the San Jose River three-fifths to the San Jose ditch and two-fifths to the La Isla ditch. See The Acequia de la Isla v. The Acequia de San Jose, No. 2160, Judgment (Mora County District Court August 23, 1912), filed August 29, 2011 (Doc. 65-3); Malicious Abuse of Process Motion ¶ 5, at 2 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact).

In the 1930's, in conjunction with federal depression relief programs, the Acequia de San Jose and the Acequia de La Isla began to discuss enlarging the Morphy Lake dam to store additional water. See David Kammer, Report on the Historic Acequia Systems of the Upper Rio Mora (dated July 1992), filed August 29, 2011 (Doc. 65-4)("Kammer Acequia Report"); Malicious Abuse of Process Motion ¶ 7, at 3 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). In a letter to the Acequia de San Jose dated February 23, 1939, the State Engineer outlined the procedure for "increasing the storage capacity of Lake Murphy," and advised the acequia that it should file a Declaration of Owner of Water Right, describing "the exact diversion and storage rights which are claims." Letter from Thomas M. McClure, State Engineer, to J.R. Quintana at 1-2 (dated February 23, 1939), filed August 29, 2011 (Doc. 65-4); Malicious Abuse of Process Motion ¶ 7, at 3 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). The Ditch Association filed Declaration of Owner of Water Right No. 0890 with the State Engineer in November 1939. See Declaration at 1-2; Malicious Abuse of Process Motion ¶ 8, at 3 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). In the Declaration, the Ditch Association specified that it was claiming the water rights for "the residents of the Community of Ledoux" and that the water rights were the "old vested water

rights" of 1852.  Declaration at 7-8; Malicious Abuse of Process Motion ¶ 8, at 2 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact).

Lino Sanchez irrigated land he owned using water from the San Jose Ditch.  See Ditch Association Records at 1 (executed October 17, 1939 - 1947),[4] filed August 29, 2011 (Doc. 65-15)("1939-1947 Ditch Records"); Malicious Abuse of Process Motion ¶ 20, at 5 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact).  The Ditch Association's account books show that the Ditch Association assessed a $471.37 delinquency against L. Sanchez in 1939 and carried the delinquency forward until 1947.  See 1939-1947 Ditch Records at 9;[5] Malicious Abuse of Process Motion ¶ 20, at 5 (setting forth this fact).[6]  The Ditch Association's

_____

[4]There is no specific month or day on record of when the Ditch Association made the delinquency assessment.

[5]There is no specific month or day on record of when the Ditch Association made the delinquency assessment.

[6]The Defendants assert that they dispute material fact 20, that in the Malicious Abuse of Process Statement of Undisputed Facts.  See Malicious Abuse of Process Response ¶ 5, at 2 (disputing this fact); Eric Romero, Translation of the Old Official Records of the San Jose Ditch Established in 1861, at 11-17, filed October 7, 2011 (Doc. 90)("Eric Romero Report").  Material Fact 20 states in full:

> The Association's account books from the years 1939-1946 list Lino Sanchez as owning 68.55 acres.  An entry dated October 17, 1939 appears to assess a $471.37 delinquency against Mr. Sanchez, on 68.55 acres, in connection with Morphy Lake.  The $471.37 delinquency is carried forward, augmented by various "taxes," until 1947, when the delinquency is no longer reflected.

Malicious Abuse of Process Motion ¶ 20, at 5.  The Defendants cite the Eric Romero Report and state that after many years of delinquencies L. Sanchez was removed from the acequia's rolls.  See Malicious Abuse of Process Response ¶ 5, at 2.  The Defendants, however, fail to point the Court to any information contained within the Eric Romero Report that specifically controverts the allegations within Material Fact 20.  On examining that document, the Court found that much of Dr. Romero's analysis seems to support the A. Aragon and M. Aragon's assertions.  Furthermore, the Eric Romero Report is not attested.  See Carr v. Tatangelo, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003)("Because the preliminary report was submitted without attestation, it had no probative value

account books show an entry for the "Lino Sanchez Estate" for the years 1948, through 1950 or 1951.[7]  Ditch Association Records (executed 1949 - 1951),[8] filed August 29, 2011 (Doc. 65-16)("1949-1959 Ditch Records"); Malicious Abuse of Process Motion ¶ 21, at 5 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact).  After the early 1950's, neither L. Sanchez nor the L. Sanchez estate are listed in the Ditch Association's account books. See Ditch Association Records (executed 1955 - 1961), filed August 29, 2011 (Doc. 65-16)("1955-1961 Ditch Records"); Malicious Abuse of Process Motion ¶ 21, at 5 (setting forth this fact); Malicious Abuse of Process Response ¶ 6, at 2 (setting forth this fact).  Association records reflect no communications with L. Sanchez or his estate or other successors in interest concerning the delinquency assessed, or other delinquencies owed, nor any steps that the Ditch Association took to collect amounts owed.  See Malicious Abuse of Process Motion ¶ 22, at 5.[9]

        L. Sanchez had a son, Silviano Sanchez.  See United States Census, 1900 for Silviano M.

---

and properly was not considered by the district judge in ruling on the officers' summary judgment motions.").  Because the Defendants have not directed the Court's attention to evidence in the record controverting this asserted fact, the Court will deem this asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).

        [7]The Court cannot tell, from the record before it, when the Ditch Association discontinued the delinquency entry.

        [8]Again, there is no specific month or day in the record indicating when the Ditch Association placed the entry into its records.

        [9]The Defendants assert that the Ditch Association records reflect that L. Sanchez had delinquencies which were never paid until he was removed from or no longer appeared in the records.  See Malicious Abuse of Process Response ¶ 6, at 2.  This statement and reliance on the A. Trujillo's affidavit does not specifically controvert the A. Aragon and M. Aragon's asserted fact that the records reflect no communications between the parties.  The Court will thus deem the A. Aragon and M. Aragon's fact admitted.  See D.N.M.LR-Civ. 56.1(b).

Sanchez, filed August 29, 2011 (Doc. 65-12);[10] Malicious Abuse of Process Motion ¶ 18, at 5 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). L. Sanchez died in the mid to late 1940's.[11] See Ditch Association Records (executed 1949 - 1951), filed August 29, 2011 (Doc. 65-16); Malicious Abuse of Process Motion ¶ 18, at 5 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). L. Sanchez' wife, or widow, transferred a tract of land to S. Sanchez in 1945. See Warranty Deed Record No. 8 (executed January 16, 1945), filed August 29, 2011 (Doc. 65-13); Malicious Abuse of Process Motion ¶¶ 18-19, at 5 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact). S. Sanchez transferred a tract of land to Tony Aragon and his wife in December 1962. See Warranty Deed 019-633 (executed December 31, 1962), filed August 29, 2011 (Doc. 65-14); Malicious Abuse of Process Motion ¶ 19, at 5 (setting forth this fact); Malicious Abuse of Process Response at 1-2 (not disputing this fact).

In 2003, A. Aragon and M. Aragon acquired approximately fifty-eight acres of land from A. Aragon's grandfather, T. Aragon, in or near Ledoux, Mora County, New Mexico. See Affidavit of Aaron Aragon ¶ 2, at 1 (executed August 23, 2010), filed August 29, 2011 (Doc. 65-1)("Affidavit of A. Aragon"); Malicious Abuse of Process Motion ¶ 1, at 1 (setting forth this fact); Malicious Abuse of Process Response ¶ 1, at 1 (not disputing this fact). A. Aragon and M. Aragon contend that, of those fifty-eight acres, a parcel of 18.6 acres and an adjacent parcel of 8.08 acres have been historically irrigated with water from the Acequia de San Jose, also known as the San Jose Ditch

---

[10]There is no specific month or day on record of when the Ditch Association made the delinquency assessment.

[11]The Court cannot tell, from the record before it, exactly when L. Sanchez died.

Association.  See Affidavit of A. Aragon ¶ 2, at 1; Malicious Abuse of Process Motion ¶ 1, at 1

(setting forth this fact).[12]  The 18.6 acre tract received water from the ditch after T. Aragon

purchased the tract, and A. Aragon and M. Aragon continued to take water from the ditch to irrigate

the tract.  See Affidavit of A. Aragon ¶¶ 10-11, at 3-4; Malicious Abuse of Process Motion ¶ 30, at

7 (setting forth this fact).[13]  A. Aragon and M. Aragon, and their predecessor in interest, did not have

permission to irrigate the 18.6 acre tract.  See Affidavit of Arnold Trujillo ¶ 3, at 8-9 (executed

---

[12]The Defendants dispute material fact 1 in the Malicious Abuse of Process  Statement of
Undisputed Facts, see Malicious Abuse of Process Response ¶ 1, at 1 (disputing this fact)(citing
Answer to First Amend. Compl. ¶¶ 9, 15, 17-18, at 3, 5-6; Affidavit of A. Trujillo ¶ 3, at 8-9).
Material fact 1 states:

> In 2003, Plaintiffs acquired approximately 58 acres of land from Tony Aragon,
> Aaron Aragon's grandfather, in or near Ledoux, Mora County, New Mexico.  Of
> those 58 acres, a parcel of 18.6 acres and an adjacent parcel of 8.08 acres have been
> historically irrigated with water from the Acequia de San Jose, also known as the San
> Jose Ditch Association.

Malicious Abuse of Process Motion ¶ 1, at 1.  The Defendants assert: "The 18.6 acre tract of
Plaintiffs' land has not had ditch rights, or the right to be irrigated from the San Jose Ditch, and has
not received water or been on the San Jose Ditch Irrigation Schedule for over seventy years."
Malicious Abuse of Process Response ¶ 1, at 1.  The Court views this statement as setting forth an
additional fact rather than an attempt to specifically controvert A. Aragon and M. Aragon's assertion
that the 18.6 acre tract has been "historically irrigated" using water from the San Jose Ditch.
Because the Defendants have not directed the Court's attention to evidence in the record
controverting this asserted fact, the Court will deem this asserted fact admitted.  See D.N.M.LR-Civ.
56.1(b).

[13]The Defendants purport to dispute this fact, that T. Aragon received water from the ditch
and that A. Aragon and M. Aragon continued to use water from the ditch.  See Malicious Abuse of
Process Response ¶ 8, at 3.  The Defendants, relying on A. Trujillo's affidavit, assert that the A.
Aragon and M. Aragon "surreptitiously irrigated the 18.60 acre tract."  Malicious Abuse of Process
Response ¶ 8, at 3.  The Court views this as asserting an additional fact rather than an attempt to
specifically controvert A. Aragon and M. Aragon's assertion that the 18.6 acre tract had been
irrigated using water from the San Jose Ditch.  Because the Defendants have not directed the Court's
attention to evidence in the record controverting this asserted fact, that the Aragons continued to
irrigate the 18.6 acre tract with water from the ditch, the Court will deem this asserted fact admitted.
See D.N.M.LR-Civ. 56.1(b).

October 6, 2011), filed October 7, 2011 (Doc. 90, Exhibit A)("Affidavit of A. Trujillo"); Malicious Abuse of Process Response ¶ 8, at 3 (setting forth this fact).  The 18.6 acre tract has not, however, had recognized ditch rights, or permission to irrigate from the San Jose Ditch, and has not been on the San Jose Ditch Association irrigation schedule for seventy years.  See Affidavit of A. Trujillo ¶¶ 3-5, at 8-9; Malicious Abuse of Process Response ¶ 1, at 1 (setting forth this fact).[14]

The Defendants are: (i) the San Jose Ditch Association; (ii) the Ditch Association's President and Commissioner, Augustine Garcia; (iii) the Ditch Association's Treasurer and Commissioner, Arnold Trujillo; and (iv) the Ditch Association's Secretary and Commissioner, Darrell Herrera.  The Defendants recognize A. Aragon and M. Aragon's right to irrigate the 8.08 tract of land with water rights from the acequia.  See Affidavit of A. Aragon ¶ 3, at 2; Malicious Abuse of Process Motion ¶ 2, at 2 (setting forth this fact); Malicious Abuse of Process Response ¶ 2, at 1-2 (not disputing this portion of the fact).  The Defendants refuse to recognize A. Aragon and M. Aragon's right to irrigate the 18.60 acre tract.  See Affidavit of A. Aragon ¶ 3, at 2; Malicious Abuse of Process Motion ¶ 2, at 2 (setting forth this fact).[15]  The Defendants informed A. and M. Aragon's grandfather and

---

[14]Whether L. Sanchez abandoned his ditch rights is in dispute.  The Court, however, must construe the facts in a manner most favorable to the Defendants, the non-moving party.  See Hunt v. Cromartie, 526 U.S. 541, 551 (1999)(stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party).

[15]The Defendants purport to dispute this fact -- that the Defendants refuse to recognize A. Aragon and M. Aragon's right to irrigate the 18.6 acre tract -- stating:

> Defendants have informed Plaintiffs and their predecessors on several occasions that the right to use the acequia ("ditch rights") to irrigate the 18.60 acre tract was abandoned over seventy years ago by the Plaintiffs' predecessor, Lino Sanchez.  The right to irrigate the tract is distinct from having ditch rights to irrigate the tract.

Malicious Abuse of Process Response ¶ 2, at 1-2.  The Defendant's cite A. Trujillo's affidavit which

predecessor S. Sanchez on several occasions that L. Sanchez abandoned the right to use the acequia,

ditch rights, to irrigate the 18.60 acre tract over seventy years ago.  See Affidavit of A. Aragon ¶ 4,

at 2; Malicious Abuse of Process Response ¶ 2, at 1-2.

    A. Aragon and M. Aragon and their predecessor-in-interest, T. Aragon, tried to pay the

delinquencies on the 18.60 acre tract several times so that they could irrigate the tract.  See Affidavit

of A. Aragon ¶¶ 4-5, at 2; Malicious Abuse of Process Motion ¶¶ 26-27, at 6 (setting forth this fact);

Malicious Abuse of Process Response at 3 (not disputing this fact).  Each time the Ditch Association

_____

states:

> Plaintiffs have known that they do not have ditch rights to irrigate the 18.6 acre tract
> based upon the following facts

> (a)    After Tony Aragon acquired the property in 1962 he requested
>        permission . . . to irrigate . . . but was denied because the ditch rights
>        had been abandoned decades earlier . . .

> (b)    Tony Aragon tried again in about 1984 . . . but was denied again for
>        the same reason. . . .

> (c)    The 18.6 acre tract has not been on the irrigation rotation schedule,
>        yet Tony Aragon and later the Plaintiffs without permission, illegally
>        irrigated parts of it.

> (d)    Despite being twice denied permission to irrigate the 18.6 acre tract,
>        Tony Aragon, and later the Plaintiffs surreptitiously irrigate parts of
>        the tract not from the acequia directly but from an adjoining tract that
>        Tony Aragon owns. . . .

> (e)    Plaintiffs tried to transfer water rights to the 18.6 acre tract on about
>        February 21, 2009 because they knew that they did not have ditch
>        rights. . . .

Affidavit of A. Trujillo ¶ 3, at 8-9.  This statement and A. Trujillo's affidavit, do not specifically
controvert the Plaintiffs' asserted fact -- that the Defendants refuse to recognize A. Argon and M.
Aragon's right to irrigate the 18.6 acre tract..  Thus, the Court will deem the fact admitted.  See
D.N.M.LR-Civ. 56.1(b). The Court, however, views the Defendant's statement as an attempt to
assert an additional fact and will treat it as an additional fact.

refused the payment.  See Affidavit of A. Aragon ¶¶ 4-5, at 2; Malicious Abuse of Process Motion

¶¶ 26-27, at 6 (setting forth this fact); Malicious Abuse of Process Response at 3 (not disputing this

fact).  In 1978, the Ditch Association permitted Felipe Esquibel to pay a delinquency of $ 324.20

that Feliciano Aragon incurred in connection with the ditch, lake, and river.  See Ditch Association

Records (executed 1976 - 1982), filed August 29, 2011 (Doc. 65-20)("1976-1982 Ditch Records");

Ditch Association Delinquencies (executed 1942 - 1950), filed August 29, 2011 (Doc. 65-20)("1942-

1950 Delinquencies"); Malicious Abuse of Process Motion ¶ 29, at 7 (setting forth this fact).[16]  In

1982, the Ditch Association permitted Esquibel to pay a delinquency of $310.00 previously incurred

by the Quintana brothers in connection with the ditch, lake, and river.  See 1978-1982 Ditch

Records; 1942-1950 Delinquencies; Malicious Abuse of Process Motion ¶ 29, at 7 (setting forth this

fact).[17]  Records also indicate that other parciantes have been delinquent and remained on the Ditch

---

[16]The Defendants dispute this fact, that the Ditch Association permitted Felipe Esquibel to pay a delinquency, and state: "While the Association has allowed other members to pay past delinquencies, none have been as old as those regarding the 18.60 acre tract formerly of Lino Sanchez, which include not only unpaid ditch dues, but also uncontributed labor or peons, and unpaid Morphy Lake construction and repair contributions."  Malicious Abuse of Process Response ¶ 9, at 3.  Part of the Defendants' statement, however, is argument about the similarity between L. Sanchez and Felipe Esquibel, and the Court will address this issue in its analysis.  See Ruiz v. City of Brush, No. 05-897, 2006 WL 1816454, at *4 (D. Colo. June 30, 2006)("[T]he 'sole purpose' of the required statements of and responses to undisputed material facts is 'to establish facts and determine which of them are in dispute[;] [l]egal argument should be reserved for separate portions of the brief.'")(citation omitted).  The Court views the other part of the Defendant's statement -- that the L. Sanchez delinquencies involved unpaid ditch dues as well as uncontributed labor or peons, unpaid Morphy Lake construction, and unpaid repair contributions -- as an attempt to assert an additional fact and the Court will treat it as an additional fact.  See Malicious Abuse of Process Response ¶ 9, at 3.  Because the Defendants do not controvert A. Aragon and M. Aragon's asserted fact, that the Ditch Association permitted Felipe Esquibel to pay a delinquency, the Court will deem this fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[17]The Defendants also dispute this fact -- that the Ditch Association permitted Esquibel to pay the delinquency -- in their response.  See Malicious Abuse of Process Response ¶ 9, at 3.  For the same reasons that the Court deemed the fact that the Ditch Association's decision to permit

membership lists.  See San Jose Ditch Association Treasurer's Report (executed November 19, 2002), filed August 29, 2011 (Doc. 67-6); Schedule of Delincuencias/Dues/Penalties Owed (executed December 31, 2008), August 29, 2011 (Doc. 67-7); Lista De Delincuencias Del Trabajo de La Laguna (executed 1955), filed August 29, 2011 (Doc. 67-8).[18]  In December 2009, A. Aragon and M. Aragon's Declaration of Ownership of Water Rights with the Office of the State Engineer, claiming water rights on the 8.08 acre tract and the 18.6 acre tract, was accepted for filing after a finding that the properties had been "historically irrigated."  Affidavit of A. Aragon ¶ 7, at 2; Malicious Abuse of Process Motion ¶ 32, at 7 (setting forth this fact).[19]  A. Aragon and M. Aragon also consulted New Mexico water law attorney George Chandler and the Plaintiffs' current attorneys, the firm of Humphrey & Ode, both of whom advised the Plaintiffs that they had valid water rights, before filing suit.  See Affidavit of A. Aragon ¶¶ 8-9, at 3; Malicious Abuse of Process Motion ¶¶ 33-34, at 7-8 (setting forth this fact).[20]

---

Esquibel to pay a delinquency of $324.20 admitted, the Court will deem this fact, the Ditch Association's decision to permit Esquibel to pay a $310.00 delinquency, admitted.  See D.N.M.LR-Civ. 56.1(b).

[18]The Defendants dispute the relevancy of this fact, that other parciantes were permitted to pay delinquencies, but do not specifically controvert it.  See Equal Protection Response ¶ 10, at 3.  Because the Defendants have not directed the Court's attention to evidence in the record controverting this asserted fact, the Court will deem the fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[19]The Defendants assert that this fact, that the State Engineer accepted for filing A. Aragon and M. Aragon's Declaration of Ownership of Water Rights, is not relevant.  See Malicious Abuse of Process Response ¶ 7, at 3.  Because the Defendants have not directed the Court's attention to evidence in the record controverting this asserted fact, the Court will deem the fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[20]The Defendants assert that this fact, that A. Aragon and M. Aragon consulted with attorneys, is not relevant.  See Malicious Abuse of Process Response ¶ 11, at 3-4.  Because the Defendants have not directed the Court's attention to evidence in the record controverting this asserted fact, the Court will deem the fact admitted.  See D.N.M.LR-Civ. 56.1(b).

## PROCEDURAL BACKGROUND

Pursuant to rule 56 of the Federal Rules of Civil Procedure, A. Aragon and M. Aragon filed their motion for summary judgment on the Defendants' counterclaim for malicious abuse of process. See Malicious Abuse of Process Motion at 1.   A. Aragon and M. Aragon argue that they had a reasonable belief that they owned valid water rights, because the State Engineer issued a license recognizing those rights, and because there has not been any judicial determination that the owners abandoned those rights nor has the State Engineer ever instituted forfeiture proceedings.   See Malicious Abuse of Process Motion at 12-17.   A. Aragon and M. Aragon also argue that they had a reasonable belief that they acquired ditch rights in the Acequia de San Jose "by virtue of being successors-in-interest to Lino Sanchez, and that the ditch itself and the easement interest therein for the purpose of delivering . . . water to the 18.6 [acre] tract was a valuable appurtenance to that tract." Malicious Abuse of Process Motion at 17.   A. Aragon and M. Aragon assert that they had a reasonable belief that the Ditch Association deprived them of their rights in the ditch and their water rights.   See Malicious Abuse of Process Motion at 18-23.   A. Aragon and M. Aragon conclude that the Court should dismiss the Defendants' malicious-abuse-of-process counterclaim, because A. Aragon and M. Aragon had probable cause to file their claims, and because the Defendants cannot show that A. Aragon and M. Aragon sought an illegitimate end.   See Malicious Abuse of Process Motion at 23.

The Defendants filed their Response to A. Aragon and M. Aragon's Malicious Abuse of Process Motion on October 7, 2011.[21]   See Malicious Abuse of Process Response at 1.   The

_____

[21]The Defendants cite to their answer in response to A. Aragon and M. Aragon's undisputed factual issues.  The Defendants' answer is not verified.  Accordingly, the Defendants concede, as they must, that their unverified answer cannot be used to create a genuine issue of material fact.  See

Defendants filed a Notice of Errata to provide a copy of the "Water Right Transfer Application by Plaintiff Aaron Aragon and record of the Defendant Association," which they omitted from their Malicious Abuse of Process Response.  Defendants Notice of Errata, filed October 11, 2011 (Doc. 92).  The Defendants contend that  A. Aragon and M. Aragon "knew that the 18.60 acre tract did not have ditch rights," and that A. Aragon and M. Aragon "filed this suit to intimidate and extort Defendants' recognition of abandoned ditch rights."  Malicious Abuse of Process Response at 6.

A. Aragon and M. Aragon filed their Reply to the Defendants' Malicious Abuse of Process Response on October 24, 2011.  See Plaintiffs' Reply to Defendants' Response to Motion for Summary Judgment on Defendants' Counterclaim for Malicious Abuse of Process, filed October 24, 2011 (Doc. 102)("Malicious Abuse of Process Reply").  A. Aragon and M. Aragon argue that the Defendants have not set forth specific evidence to contradict A. Aragon and M. Aragon's evidence that A. Aragon and M. Aragon had probable cause to file claims of unlawful deprivation of water rights, or any evidence of "impropriety suggesting extortion, delay or harassment." Malicious Abuse of Process Reply at 8-12.

A. Aragon and M. Aragon also filed a motion seeking summary judgment on their claims that the "Defendants have denied them equal protection and due process of the law, and that they have taken Plaintiffs' water rights and ditch rights."  Equal Protection Motion at 1.  A. Aragon and M. Aragon contend that the Defendants denied them equal protection, because the Defendants' refusal to accept A. Aragon and M. Aragon's payment for L. Sanchez' delinquencies is arbitrary and irrational, and because the Ditch Association has allowed similarly situated persons to pay past delinquencies and resume irrigation.  See Equal Protection Motion at 12-21.  A. and M. Aragon cite

_____

Tr. at 38:15-39:5 (Waltz).

Ditch Association records which show that the Ditch accepted payments from several persons for delinquencies associated with work on Morphy Lake.  See Ditch Association Records, filed August 29, 2011 (Doc. 67-8).[22]  A. Aragon and M. Aragon also contend that the Defendants violated their due-process rights by depriving them of water and ditch rights when the Defendants removed L. Sanchez from the rolls after his death without providing his successors-in-interest any opportunity to be heard.  See Equal Protection Motion at 21-25.  Lastly, A. Aragon and M. Aragon contend that the Ditch Association effected a taking of their water and ditch rights, because the Ditch Association did not have "authority to remove L. Sanchez from its rolls and thereby forever preclude use of the water rights appurtenant to his land."  Equal Protection Motion at 25-26.

The Defendants responded to A. Aragon and M. Aragon's Equal Protection Motion on October 7, 2011.  See Equal Protection Response at 1.  The Defendants argue that L. Sanchez' situation is significantly different from other members who paid delinquencies and that state law provided a legal basis for the Ditch Association to remove L. Sanchez as a member of the association.  See Equal Protection Response at 4-15.  The Defendants assert that the Court should dismiss A. Aragon and M. Aragon's procedural due process claims as a matter of law based on the affirmative defenses of laches, estoppel or waiver, because this "claim addresses matters 56 years ago in 1955," and [a]fter so many years it would be very difficult to determine as a matter of fact whether L. Sanchez or his estate had notice and opportunity to contest removal as a member of the ditch association."  Equal Protection Response at 15.  The Defendants disagree with A. Aragon and M. Aragon's contention that the "ditch association's actions were not reasonably necessary to

_____

[22]The record shows that six persons paid their delinquencies on six different dates from July 1, 1955 through August 5, 1957.

advance a substantial public purpose because their actions would inure to their own benefit."  Equal

Protection Response at 15.  The Defendants argue that "[t]heir actions would also benefit all the

members of the ditch association who have been carrying the burden of paying annual ditch

assessments and working on the ditch system and Morphy Lake since 1939."  Equal Protection

Response at 15.

A. Aragon and M. Aragon replied to the Defendants' Equal Protection Response on October

24, 2011.  See Reply to Defendants' Response to Plaintiffs' Motion for Summary Judgment on

Plaintiffs' Equal Protection, Due Process and Takings Claims, filed October 24, 2011 (Doc.

103)("Equal Protection Reply").  A. Aragon and M. Aragon assert that the Defendants did not

controvert their facts that the Ditch Association has treated them differently that other similarly

situated members.  See Equal Protection Reply at 5-7.  A. Aragon and M. Aragon disagree with the

Defendants' argument that New Mexico law gives the Defendants authority to remove L. Sanchez

from the Ditch Association's membership rolls.  See Equal Protection Reply at 7-10.  A. Aragon and

M. Aragon argue that the Defendants "fail to meet their burden to come forward with evidence to

dispute Plaintiffs' material facts" regarding their due process and takings claims.  Equal Protection

Reply at 12.

The Defendants filed a motion seeking "to dismiss the case against Augustin Garcia, Arnold

Trujillo, and Darrell Herrera in their individual capacities pursuant to Rule 8([c]) of Fed. R. Civ. P.

based on the doctrine of qualified immunity under 42 U.S.C. § 1983."  Motion to Dismiss Augustin

Garcia, Arnold Trujillo and Darrell Herrera in their Individual Capacities, filed September 13, 2011

(Doc. 75)("Qualified Immunity Motion").  See Defendants' Memorandum in Support of Motion to

Dismiss Augustin Garcia, Arnold Trujillo and Darrell Herrera in their Individual Capacities, filed

September 13, 2011 (Doc. 76)("Qualified Immunity Memorandum").  In support of their Qualified

Immunity Motion, the Defendants state that "the First Amended Complaint does not allege facts

sufficient to establish that the Defendants should have known that the Plaintiffs had 'clearly

established' water or ditch rights for the subject 18.60 acre tract."   Qualified Immunity

Memorandum at 3.

A. Aragon and M. Aragon responded to the Defendants' Qualified Immunity Motion on

October 7, 2011.  See Plaintiffs' Response to Defendants' Motion to Dismiss Augustin Garcia,

Arnold Trujillo and Darrell Herrera in their Individual Capacities, filed October 7, 2011 (Doc.

91)("Qualified Immunity Response").  A. Aragon and M. Aragon contend that the Defendants'

actions were not undertaken within the scope of their discretionary duties or authority, because the

Defendants do not have the statutory authority to refuse to accept payment for ditch delinquencies,

or to determine whether ditch and water rights have been forfeited or abandoned.  See Qualified

Immunity Response at 5-14

The Defendants replied to A. Aragon and M. Aragon's Qualified Immunity Response on

October 24, 2011.  See Defendants' Reply to Plaintiffs' Response to Defendants' Motion to Dismiss

Defendants in their Individual Capacities, filed October 24, 2011 (Doc. 101)("Qualified Immunity

Reply").  The Defendants cite a New Mexico statute that the Defendants assert is "a sufficient basis

for the Defendants to assume they have discretionary authority to refuse to accept money for unpaid

assessments."  Qualified Immunity Reply at 6-7.  The Defendants argue that the "Court should grant

qualified immunity to the Defendants because reasonable officials in their position would not have

known that their action was beyond the scope of their statutory authority."  Qualified Immunity

Reply at 7.

-17-

The Court held a hearing on the three motions on November 4, 2011.  See Clerk's Minutes, filed November 4, 2011 (Doc. 104).  The Court asked the parties if they needed three separate opinions, one for each motion, or if the Court could enter a single order deciding all three motions.  See Transcript of Hearing at 14:9-17, 16:22-17:5 (November 4, 2011) ("Tr.") (Court).[23]  The parties agreed that the Court could enter a single opinion ruling on the three motions.  See Tr. at 14:18-15:12 (Ode), 17:10-18, 79:20-80:2 (White).

During her summary of the facts at the hearing, A. Aragon and M. Aragon's counsel stated that one reason the Ditch Association gave for refusing to allow A. Aragon and M. Aragon to irrigate their land was because L. Sanchez had either abandoned or forfeited his water rights.  See Tr. at 5:8-17 (Ode).  Later, the Defendants' counsel stated that forfeiture is not an issue in this case, because the Defendants are "not arguing that water rights were forfeited.  And the statute on forfeiture does not apply to ditch rights. . . ."  Tr. at 22:1-4 (White).

The Court asked the parties to discuss the facts, identifying which facts they do not dispute and which fact the Court must resolve at trial.  See Tr. at 3:22-23, 17:1-4, 17:24-18:1, 26:25-27:2, 32:22-23, 39:8-11 (Court).  The parties, together and separately, identified the following factual issues for trial:  (i) the amount and bases for the ditch delinquencies for the 18.6 acre tract, see Tr. at 11:15-20 (Humphrey), 33:23-34:10 (Waltz), 47:1-5 (Humphrey); (ii) the Ditch Association's reasons for not allowing L. Sanchez and his successors-in-interest to irrigate, see Tr. at 11:20-12-8 (Humphrey); (iii) the Ditch Association's reason for allowing some persons to pay their delinquencies, but not allowing L. Sanchez' successors to pay the delinquencies, see Tr. at 14:4-6

---

[23]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

(Humphrey), 34:11-35:16 (Waltz); (iv) why the Ditch Association allows owners to irrigate other tracts that L. Sanchez previously owned, see 12:10-20 (Humphrey); (v) the nature of the Ditch Association's customs and basis for removing L. Sanchez from the Ditch Association's rolls before the Ditch Association adopted bylaws, see Tr. 25:10-22 (White), 44:11-15 (Humphrey); (vi) whether L. Sanchez abandoned his ditch rights, see Tr. at 22:6-22 (White), 61:24-62:3 (Humphrey); and (vii) the period of time that no one irrigated the 18.6 acre tract, see Tr. at 38:3-8 (Waltz).  The parties do not dispute the following factual issues:  (i) A. Aragon and M. Aragon, and their predecessor-in-interest, T. Aragon, tried to pay the delinquencies on the 18.6 acre tract, but the Ditch Association would not accept payment, see Tr. at 9:1-11:14 (Humphrey), 22:6-24:1 (White); (ii) L. Sanchez had valid water rights to irrigate the 18.6 acre tract, see Tr. at 21:16-18 (White), 48:12-14 (Humphrey); and (iii) A. Aragon and M. Aragon irrigated the 18.6 acre tract with water from the ditch, see Tr. at 26:5-13 (White), 48:10-11 (Humphrey).

Near the end of the hearing, the Defendants' counsel asked the Court to convert their motion to dismiss the individual Defendants on qualified immunity grounds to a motion for summary judgment.  See Tr. at 79:15-19 (White).  The Court stated that it would not convert the motion to dismiss to a motion for summary judgment without giving A. Aragon and M. Aragon notice, and asked A. Aragon and M. Aragon's counsel to send the Court a letter if she objects to the Court converting the motion to dismiss to a motion for summary judgment.  See Tr. at 81:21-82:6 (Court). A. Aragon and M. Aragon's counsel sent a letter to the Court stating that A. Aragon and M. Aragon

> have no objection to the Court's treating Defendants' Motion to Dismiss Augustin Garcia, Arnold Trujillo and Darrell Herrera in Their Individual Capacities [Docs. 75 and 76] as a motion for summary judgment, to be considered in connection with Plaintiffs' pending summary judgment motions and the summary judgment evidence filed to date.

-19-

Letter from Connie Odé to the Court (November 7, 2011), filed November 7, 2011 (Doc. 105).

## LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(a) states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.")(internal quotation marks omitted). Once the movant meets this burden, rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56 provides that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record  . . . or showing that the

materials cited do not establish the absence of . . . a genuine dispute . . . ." Fed. R. Civ. P. 56(c). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'")(citation omitted).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e); Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

       To survive summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539.  Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there

is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If

the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may

be granted."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 249 (internal citations omitted). Where

a rational trier of fact, considering the record as a whole, could not find for the non-moving party,

there is no genuine issue for trial.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S.

574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three

principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue

whether a genuine issue exists as to material facts requiring a trial.  <u>See</u> <u>Anderson v. Liberty Lobby,</u>

<u>Inc.</u>, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor

of the non-moving party, and construe all evidence in the light most favorable to the non-moving

party.  <u>See</u> <u>Hunt v. Cromartie</u>, 526 U.S. 541, 550-55 (1999).  Third, the court cannot decide any

issues of credibility.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. at 255.

## <u>NEW MEXICO LAW REGARDING WATER AND DITCH RIGHTS</u>

Water rights and ditch rights "are distinct, are derived from different sources, and are

governed by different rules of law."  <u>Olson v. H & B Properties, Inc.</u>, 118 N.M. 495,  498, 882 P.2d

536, 539 (1994)(citing <u>Snow v. Abalos</u>, 18 N.M. 681, 694-97, 140 P. 1044, 1048-49 (1914)).

"Water rights are derived from appropriation for beneficial use while ditch rights are derived from

ownership of the ditch and an easement therein."  <u>Olson v. H & B Properties, Inc.</u>, 118 N.M. at 498,

882 P.2d at 539 (1994)(citing <u>Murphy v. Kerr</u>, 296 F.536, 542-44 (D.N.M. 1923), <u>aff'd</u>, 5 F.2d 908

(8th Cir. 1925)).

> The physical structure of the ditch itself is real property, owned by the community
> who built it as tenants in common by virtue of their joint investment of capital and

labor.  Successors in title to the lands of the original ditch community likewise own the ditch as tenants in common, having acquired their interest in the ditch structure with title to their land.

Olson v. H & B Properties, Inc., 118 N.M. at 498, 882 P.2d at 539.

Owners of water rights using community ditches must provide labor and pay assessments for the maintenance and operation of the community ditch.  See N.M.S.A. §§ 73-3-4 and 73-3-5.

New Mexico state law provides:

No person, who has after written notice failed or refused to do his work or pay the amount assessed against him in lieu of such work upon the community ditch or acequia, shall be allowed to take or use any water from such community ditch or acequia or lateral thereof, while in default in such payment or failure to do such work.

N.M.S.A. § 73-3-6.  See La Acequia de San Rafael del Guique v. Lopez, 72 N.M. 349, 351, 383 P.2d 826, 827 (1963)(quoting La Mesa Community Ditch v. Appelzoeller, 19 N.M. 75, 140 P.1051 (1914))(holding that no remedy exists for the collection of assessments for the expense of maintaining a community ditch except for depriving the delinquent party of the right to the use of water until payment is made).

"The right of way for water flow through the irrigation ditch, as distinguished from ownership of the ditch structure itself, is an easement."  Olson v. H & B Properties, Inc., 118 N.M. at 498, 882 P.2d at 539.  Under the cessation-of-purpose doctrine, an "easement that is created to serve a particular purpose terminates when the underlying purpose for the easement no longer exists."  Olson v. H & B Properties, Inc., 118 N.M. at 498, 882 P.2d at 539 (citing Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land ¶ 9.03 (1988)).

"The owner of the dominant property may abandon the right to an easement."  Sitterly v. Matthews, 129 N.M. 134, 140, 2 P.3d 871, 877 (Ct. App. 2000)(citing Posey v. Dove, 57 N.M. 200,

211, 257 P.2d 541, 548 (1953)).  To abandon such an easement, "the owner must evince a clear and unequivocal intention to do so."  <u>Sitterly v. Matthews</u>, 129 N.M. at 140, 2 P.3d at 877.  "The owner's 'intention may be evidenced by acts as well as words[,] but where an act is relied on as the proof, it must unequivocally indicate such intention.'"  <u>Sitterly v. Matthews</u>, 129 N.M. at 140, 2 P.3d at 877 (quoting <u>Posey v. Dove</u>, 57 N.M. 200, 211, 257 P.2d 541, 548 (1953)).

<u>**NEW MEXICO LAW REGARDING MALICIOUS ABUSE OF PROCESS**</u>

In New Mexico, the tort of malicious abuse of process is disfavored, because of "the potential chilling effect on the right of access to the courts."  <u>Fleetwood Retail Corp. of N.M. v. LeDoux</u>, 142 N.M. 150, 156, 164 P.3d 31, 37 (2007)(citation omitted).  New Mexico courts state that the tort of malicious abuse of process should be construed narrowly to protect the right of access to the courts.  See <u>Durham v. Guest</u>, 145 N.M. at 701, 204 P.3d at 26; <u>Weststar Mortg. Corp. v. Jackson</u>, 133 N.M. 114, 119, 61 P.3d 823, 828 (2002).  Malicious-abuse-of-process claims involve balancing "the interest in protecting litigants' right of access to the courts and the interest in protecting citizens from unfounded or illegitimate applications of the power of the state through the misuse of the courts."  <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 517, 953 P.2d at 282. "[T]he filing of a proper complaint with probable cause, and without any overt misuse of process, will not subject a litigant to liability for malicious abuse of process, even if it is the result of a malicious motive."  <u>DeVaney v. Thriftway Mktg. Corp.</u>, 124 N.M. at 520, 953 P.2d at 285.

The elements of a malicious-abuse-of-process action are: (i) the use of process in a  judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (ii) a primary motive in the use of process to accomplish an illegitimate end; and (iii) damages.  See <u>Durham v. Guest</u>, 145 N.M. at 701, 204 P.3d at 26.  An improper use of process may be shown by:

-24-

(i) filing a complaint without probable cause; or (ii) an irregularity or impropriety suggesting extortion, delay or harassment, or other conduct formerly actionable under the tort of abuse of process. See Durham v. Guest, 145 N.M. at 701, 204 P.3d at 26.

The Supreme Court of New Mexico has defined probable cause in the malicious abuse of process context as "a reasonable belief, founded on known facts established after a reasonable pre-filing investigation that a claim can be established to the satisfaction of a court or jury." Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (internal quotations marks omitted)(citations omitted). "The lack of probable cause must be manifest." Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 154, 164 P.3d at 36 (citation omitted). Probable cause is to be judged on the facts as they appeared at the time; it is not to be judged on later-discovered facts. See Weststar Mortg. Corp. v. Jackson, 133 N.M. at 122, 61 P.3d at 831 ("Probable cause . . . is to be judged by facts as they appeared at the time, not by later-discovered facts.")(citing Restatement (Second) of Torts § 662 cmt. e). The existence of probable cause in the underlying proceeding is a question of law that the court must decide. See Weststar Mortg. Corp. v. Jackson, 133 N.M. at 123, 61 P.3d at 832 ("[T]he existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial judge.")(internal quotation marks omitted)(citations omitted). A malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim." DeVaney v. Thriftway Marketing Corp., 124 N.M. at 522, 953 P.2d at 287.

Lack of probable cause is not the only way to establish misuse of process; a plaintiff can also

show misuse of process by pointing to "some irregularity or impropriety suggesting extortion, delay or harassment." DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. A plaintiff may prove misuse of process through procedural irregularity -- such as misuse of discovery, subpoenas, and attachments -- or an act that otherwise indicates wrongful use of proceedings -- such as an extortion attempt. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. Some examples of misuse of process include: (i) excessive execution on a judgment; (ii) attachment of property other than the property involved in the litigation; (iii) oppressive conduct in connection with an arrest or seizure of property; and (iv) extortion of excessive sums of money. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

Under the requirement of a primary improper motive, it is insufficient that the malicious abuse-of-process defendant acted with ill will or spite. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287 (citing W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David G. Owen, Prosser and Keeton on the Law of Torts § 121, at 897 (5th ed. 1984)("[E]ven a pure spite motive is not sufficient where process is used only to accomplish the result for which it was created.")(emphasis added). There must be a purpose to accomplish an  illegitimate end. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. The Supreme Court of New Mexico has given several examples of improper purpose, including: (i) a litigant who pursues a claim knowing that the claim is meritless; (ii) a litigant who pursues a claim primarily to deprive another of the beneficial use of his or her property in a manner unrelated to the merits of the claim; (iii) a litigant who misuses the law primarily for harassment or delay; or (iv) a litigant who initiates proceedings primarily for the purpose of extortion. See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287. An overt misuse of process may support an inference of an improper

purpose, but a court may not infer from evidence of an improper purpose alone that there was not probable cause or that there was not a proper use of process.  See DeVaney v. Thriftway Mktg. Corp., 124 N.M. at 522, 953 P.2d at 287.

The Court has analyzed the New Mexico law on malicious abuse of process claims in previous cases.  In Mosley v. Titus, 762 F.Supp.2d 1298 (D.N.M. 2010)(Browning, J.), the Court found that, where an individual made a pre-filing inquiry and reasonably interpreted New Mexico case law, the Court should grant summary judgment in favor of the defendant on a malicious abuse of process claim.  See 762 F.Supp.2d at 1327, 1329.  The Court found that an individual's pre-filing inquiry supported a reasonable belief that he had grounds to sue based on the law and facts before him.  See Mosley v. Titus, 762 F.Supp.2d at 1329.

## LAW REGARDING EQUAL PROTECTION CLAIMS

The Equal Protection Clause of the Fourteenth Amendment guarantees that "no states shall . . . deny to any person within the jurisdiction to the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause 'keeps governmental decision makers from treating differently persons who are in all relevant respects alike.'"  Soskin v. Reinertson, 353 F.3d 1242, 1247 (10th Cir. 2004)(quoting Nordlinger v. Hahn, 505 U.S. 1, 10 (1992)).  See Corder v. Lewis Palmer School Dist. No. 38, 566 F.3d 1219, 1233 (10th Cir. 2009)("Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'")(quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).  Generally, to state a claim under § 1983 for violation of the equal protection clause, the plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals that are not in that class.  See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).

## LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV. The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons.  See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property." Chavez-Rodriguez v. City of Santa Fe, No. 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.).

"The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment."  Farthing v. City of Shawnee, Kan., 39 F.3d 1131, 1135 (10th Cir. 1994)(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577. "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract.'"  Teigen v. Renfrow, 511 F.3d 1072, 1079 (10th Cir. 2007).  See Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577 ("Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits."); Farthing v. City of Shawnee, Kan., 39 F.3d at 1135 ("Rather, property interests, which are the subject of the present litigation, 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577)); Paul v. Davis, 424 U.S. 693, 710 (1976)("[Liberty and property] interests attain . . . constitutional status by virtue of the fact that they have been initially recognized and protected by state law.").

"[O]nce it is determined that the Due Process Clause applies, 'the question remains what process is due.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). "An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542 (citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)). The Supreme Court has described

> "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.
>
> . . . .
>
> [T]he pretermination "hearing," though necessary, need not be elaborate. We have pointed out that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted)(citations omitted).

## LAW REGARDING TAKINGS CLAIMS UNDER THE FIFTH AMENDMENT

The Takings Clause of the Fifth Amendment to the Constitution of the United States states that "private property" shall not "be taken for public use, without just compensation."  U.S. Const. amend. V.   The Supreme Court of the United States has stated: "The Takings Clause of the Fifth Amendment, applicable to the States through the Fourteenth Amendment, . . . prohibits the government from taking private property for public use without just compensation."  Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001).  A government actor can "take" property for the purposes of the Fifth Amendment either by physically depriving the owner of the property or by placing upon the property such restrictive regulations that the owner is effectively deprived of the ability to use the property.   See Palazzolo v. Rhode Island, 533 U.S. at 617 (noting that "even a minimal 'permanent physical occupation of real property" requires compensation under the Clause,'" and that "a regulation which 'denies all economically beneficial or productive use of land' will require compensation under the Takings Clause").

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. at 807.  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  Issues of qualified immunity are best resolved at the "earliest possible stage in litigation."  Pearson v. Callahan, 129 S.Ct. 808, 815 (2009)(quoting Hunter v. Bryant, 502

U.S. 224, 227 (1991)(per curiam)).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 129 S. Ct. at 815 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  When a defendant asserts qualified immunity at summary judgment, the responsibility shifts to the plaintiff to meet a "heavy two-part burden."  Medina v. Cram, 252 F.3d 1124, 1128 (10th Cir. 2001).  The plaintiff must demonstrate on the facts alleged: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged unlawful activity.  See Riggins v. Goodman, 572 F.3d 1101, 1107 (10th Cir. 2009).  In evaluating whether the right was clearly established, the court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).  In determining whether the plaintiff has met his or her burden, the court construes the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378 (2007).  A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be "indisputable" and "unquestioned."  Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001)).  See Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992).  On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision

declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. at 202).

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified-immunity defense. In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." 129 S. Ct. at 821. The Supreme Court also noted in Pearson v. Callahan that, while no longer mandatory, the protocol outlined in Saucier v. Katz would often be beneficial. See 129 S. Ct. at 821. Once the plaintiff has established the inference that the defendant's conduct violated a clearly established constitutional right, a qualified-immunity defense generally fails. See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

> Although issues of qualified immunity normally are questions of law decided prior to trial, in exceptional circumstances historical facts may be so intertwined with the law that a jury question is appropriate as to whether a reasonable person in the defendant's position would have known that his conduct violated that right.

Maestas v. Lujan, 351 F.3d 1001, 1007-08 (10th Cir. 2003). See Roska ex rel. Roska v. Peterson, 328 F.3d 1230, 1251 (10th Cir. 2003)("The objective legal reasonableness of the [defendant's] actions is a legal question[,][b]ut where the historical facts material to that issue are in dispute there is an issue for the jury.")(internal quotation marks omitted)(citations omitted). "[T]he predicate for submitting a qualified immunity question to the jury is the existence of disputed issues of material

fact -- that is, the question of what actually happened."  Gonzales v. Duran, 590 F.3d 855, 859 (10th Cir. 2009).  See Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900 (6th Cir. 2004)("[W]here . . . qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability.").

## ANALYSIS

A. Aragon and M. Aragon argue that, because they had probable cause to file this lawsuit, the Court should grant summary judgment in their favor on the Defendants' counterclaim for malicious abuse of process.  The Defendants contend that A. Aragon and M. Aragon knew that L. Sanchez abandoned his ditch easement and, therefore, A. Aragon and M. Aragon's lawsuit is an improper use of process, because it seeks to extort the Defendants' recognition of abandoned ditch rights.

A. Aragon and M. Aragon also argue that the Defendants violated their equal protection, due process, and property rights by treating A. Aragon and M. Aragon differently than similarly situated property owners when the Defendants refused to allow A. Aragon and M. Aragon to pay ditch delinquencies and irrigate their property.  The Defendants contend that their actions were justified, because L. Sanchez had abandoned his ditch easement many years earlier.

The Individual Defendants argue that the Court should dismiss them from the case on qualified immunity grounds, because they based their actions on an earlier determination by the Ditch Association that L. Sanchez had abandoned his ditch easement.

The Court concludes that there was probable cause for A. Aragon and M. Aragon to file their lawsuit and will grant summary judgment against the defendants on the malicious abuse of process claim.  The Court finds that there is a factual issue as to whether L. Sanchez abandoned his ditch

-33-

easement.   The factual issue whether L. Sanchez abandoned his ditch easement precludes the Court

from granting A. Aragon and M. Aragon's motion for summary judgment on their procedural due

process and takings claims, and from granting the individual Defendants' motion for summary

judgment on qualified immunity grounds on those claims.   The Court determines, however, that, as

a matter of law, the Defendants have violated the Equal Protection Clause.

**I.      THE COURT WILL GRANT A. ARAGON AND M. ARAGON'S MOTION
         FOR  SUMMARY  JUDGMENT ON THE DEFENDANTS' COUNTERCLAIM FOR
         <u>MALICIOUS ABUSE OF PROCESS.</u>**

A. Aragon and M. Aragon argue that they are entitled to summary judgment on the

Defendants' counterclaim for malicious abuse of process, because they had probable cause to file

their causes of action and did not seek an illegitimate end.  <u>See</u> Malicious Abuse of Process Motion

at 11-23.  A. Aragon and M. Aragon assert that they own valid water and ditch rights, because they

are successors-in-interest to L. Sanchez, who at one time owned water rights and ditch rights to

irrigate the 18.6 acre tract that A. Aragon and M. Aragon now own.  <u>See</u> Malicious Abuse of Process

Motion at 12-17.  A. Aragon and M. Aragon further assert that they had a reasonable belief that they

owned those water rights, because the State Engineer issued a license recognizing those water rights,

there has never been a judicial determination that any owner abandoned those water rights, and the

State Engineer has never initiated any forfeiture action against A. Aragon and M. Aragon or their

predecessors-in-interest concerning those rights.  <u>See</u> Malicious Abuse of Process Motion at 13-17.

A. Aragon and M. Aragon also assert that they had a reasonable belief that they had ditch rights "by

virtue of being successors-in-interest to Lino Sanchez."  Malicious Abuse of Process Motion at 17.

A. Aragon and M. Aragon acknowledge that New Mexico law allows the deprivation of the

delinquent party of the right to the use of water until payment is made, but argue the Ditch

Association has no legal basis to make the determination that L. Sanchez abandoned his ditch rights or to refuse payment of delinquencies.  See Malicious Abuse of Process Motion at 18.  A. Aragon and M. Aragon conclude that they had probable cause to file their causes of action, because the Defendants deprived them of the use of their water and ditch rights.  See Malicious Abuse of Process Motion at 17-22.

The Defendants contend that they did not deprive A. Aragon and M. Aragon of any property rights, because A. Aragon and M. Aragon's predecessor-in-interest, L. Sanchez, abandoned his ditch rights before A. Aragon and M. Aragon acquired the 18.6 acre tract.  See Malicious Abuse of Process Response at 5.  The Defendants argue that A. Aragon and M. Aragon did not have probable cause to file their Complaint, because A. Aragon and M. Aragon knew that the 18.6 acre tract did not have ditch rights, because the Ditch Association informed their predecessor-in-interest, T. Aragon, that "the ditch rights had been abandoned decades earlier by the non-payment of ditch dues, Morphy Lake construction and repairs, and ditch cleaning or labor related to the 18.6 acre tract of the former owner, Lino Sanchez."  Affidavit of A. Trujillo (executed October 6, 2011), filed October 7, 2011 (Doc. 90).  The Defendants assert that A. Aragon and M. Aragon filed "suit to intimidate and extort Defendants' recognition of abandoned ditch rights."  Malicious Abuse of Process Response at 6.

The Court finds that the Defendants have not established genuine issues of material fact and that their malicious abuse-of-process claim fails as a matter of law.  The Court notes that New Mexico disfavors malicious abuse of process claims, because of the "chilling effect" on potential litigants with legitimate claims.  Fleetwood Retail Corp. of N.M. v. LeDoux, 142 N.M. at 156, 164 P.3d at 37.  The parties disagree whether A. Aragon and M. Aragon had probable cause to file a

lawsuit against the Defendants.  Probable cause in the malicious-abuse-of-process context means
"a reasonable belief, founded on known facts established after a reasonable pre-filing investigation
that a claim can be established to the satisfaction of a court or jury."  Fleetwood Retail Corp. of
N.M. v. LeDoux, 142 N.M. at156, 164 P.3d at 37.  A. Aragon and M. Aragon filed their Complaint
on June 6, 2010.  See Doc. 1.  The undisputed facts establish that L. Sanchez had ditch rights in the
early 1930's, but as of 1939 was delinquent on his ditch dues and other ditch contributions.
See Malicious Abuse of Process Response ¶ 5, at 2.  In the 1950's, the Ditch Association removed
L. Sanchez' name from the ditch rolls.  See Malicious Abuse Process Motion ¶ 21, at 5.  A. Aragon
and M. Aragon knew that the Office of the State Engineer had accepted for filing their Declaration
of Ownership of Water Rights water rights for the 18.60 acre tract.  See Malicious Abuse Process
Motion ¶ 33, at 5. A. Aragon and M. Aragon also knew that the Ditch Association had, since 1962,
refused all attempts to pay the ditch delinquencies and that the Ditch Association's position was that
the ditch rights had been abandoned.  See Malicious Abuse Process Motion ¶¶ 26-27, at 6.
Investigating the law regarding acequias, A. Aragon and M. Aragon knew that acequia associations
"exercise narrow functions," Wilson v. Denver, 125 N.M. 308, 317, 961 P.2d 153, 162 (1998), and
that the Supreme Court of New Mexico has held that the only remedy available to ditch associations
for delinquent assessments is "the deprivation of the delinquent party of the right to use the water
until payment is made," La Acequia de San Rafael Del Guique v. Lopez, 72 N.M. 349, 351, 383
P.2d 826, 827 (1963).  Ordinarily, to abandon a ditch right, "the owner must evince a clear and
unequivocal intention to do so."  Sitterly v. Matthews, 129 N.M. at 140, 2 P.3d at 877.

The Court concludes that A. Aragon and M. Aragon had probable cause to file their
Complaint.  The Court does not believe that, when confronted with the above facts and law, A.

Aragon and M. Aragon were required to accept the Ditch Association's self-serving assertion that L. Sanchez abandoned any ditch rights seventy years ago.  See Mosley v. Titus, 762 F.Supp.2d at 1329-30 (concluding that attorney had probable cause to file lawsuit, because he had a reasonable belief based on the facts and law known to him that he could enforce the rights of his clients through the courts).  A. Aragon and M. Aragon could reasonably believe that the Ditch Association was not authorized to determine that ditch rights had been abandoned because of prolonged non-payment, absent notice to the ditch-right holder.  See La Acequia de San Rafael Del Guique v. Lopez, 72 N.M. at 351, 383 P.2d at 827.  Furthermore, neither the Malicious Abuse of Process Response nor the Equal Protection Response provide a legal basis -- other than a blanket assertion that New Mexico has recognized the "uniqueness of each community ditch management of its water resources according to its view of the circumstances" -- why the Ditch Association is entitled to determine that rights are abandoned because of non-payment of delinquencies.  Equal Protection Response at 12 (citing Wilson v. Denver, 125 N.M. at 317, 961 P.2d at 162).  A. Aragon and M. Aragon claims do not appear to be frequently litigated in New Mexico and present some novel legal issues, which entitles them to reasonable latitude to assert their claims.  See Mosley v. Titus, 762 F.Supp.2d at 1329 (citing Guest v. Berardinelli, 145 N.M. 186, 190, 195 P.3d 353, 357 (Ct. App. 2008)).  The Court thus concludes that A. Aragon and M. Aragon had probable cause to pursue their claims.

In defense of their malicious abuse-of-process claim, the Defendants further argue that A. Aragon and M. Aragon filed their suit for an improper purpose -- to harass and extort the Defendants.  See Malicious Abuse of Process Response at 6.  The Defendants cite A. Trujillo's affidavit, which states: "Even though Plaintiffs knew of the prior Acequia decision refusing to accept payments for delinquencies because of long abandoned ditch rights, the Plaintiffs over a period of

-37-

many months in 2009 and 2010 harassed and intimidated the Acequia's Commissioners." Affidavit of A. Trujillo ¶ 6, at 9.  The Defendants do not explain why the communications A. Aragon and M. Aragon sent to the Acequia's Commissioner's were intimidating or constitute harassment.  A. Aragon and M. Aragon's Malicious Abuse of Process Motion included letters sent to the Ditch Association and the Ditch Association's attorney, Mr. Fred Waltz, on: (i) December 18, 2009; (ii) January 18, 2009; (iii) March 11, 2010; (iv) April 19, 2010; (v) May 4, 2010; (vi) June 3, 2010; and (vii) June 14, 2010.  <u>See</u> Letter to Commissioners from George Chandler (dated December 18, 2009), filed August 29, 2011 (Doc. 65-1)("Dec. 18, 2009 Letter"); Letter to Commissioners from George Chandler (dated January 18, 2010), filed August 29, 2010 (Doc. 65-1)("Jan. 18, 2010 Letter"); Letter to Commissioners from Mary Humphrey (dated March 11, 2010), filed August 29, 2011 (Doc. 65-1)("Mar. 11, 2010 Letter"); Letter to Fred Waltz from Mary Humphrey and Connie Ode (dated April 19, 2010), filed August 29, 2010 (Doc. 65-1)("Apr. 19, 2010 Letter"); Letter to Fred Waltz from Mary Humphrey and Connie Ode, (dated May 4, 2010), filed August 29, 2010 (Doc. 65-1)("May 4, 2010 Letter"); Letter to Fred Waltz from Mary Humphrey and Connie Ode (dated June 3, 2010), filed August 29, 2010 (Doc. 65-1)("June 3, 2010 Letter"); Letter to Fred Waltz from Mary Humphrey and Connie Ode (dated June 14, 2010), filed August 29, 2011 (Doc. 65-1)("June 14, 2010 Letter").  From the facts presented to the Court, it appears that A. Aragon and M. Aragon disagreed with the Ditch Association's position and took steps to resolve their differences before filing a lawsuit.  Although the tone of the letters is firm and leaves no doubt about the A. Aragon and M. Aragon's position, A. Aragon and M. Aragon do not unreasonably communicate with the Commissioners and are attempting to correct what they see as a mistaken viewpoint.  Moreover, letters do not constitute legal process.  <u>See</u> <u>S. Farm Bur. Cas. Co. v. Hiner</u>, 138 N.M. 154,

-38-

160, 117 P.3d 960, 966 (Ct. App. 2005)("The letter to the Texas Department of Insurance does not constitute legal process.").

The Defendants have not raised a genuine issue of material fact on the malicious abuse of process claim.  See  DeVaney v. Thriftway Marketing Corp., 124 N.M. at 522, 953 P.2d at 287 (stating that a malicious-abuse-of-process plaintiff who is attempting "to show a lack of probable cause must demonstrate, by the applicable standard of proof, that the opponent did not hold a reasonable belief in the validity of the allegations of fact or law of the underlying claim."). Consequently, the Court will grant summary judgment in favor of A. Aragon and M. Aragon on the Defendants' counterclaim for malicious abuse of process.

## II.   THE COURT WILL DENY A. ARAGON AND M. ARAGON'S MOTION FOR SUMMARY JUDGMENT ON THEIR EQUAL-PROTECTION, PROCEDURAL DUE-PROCESS, AND TAKINGS CLAIMS.

A. Aragon and M. Aragon argue that the Defendants denied them equal protection, because the Ditch Association "has intentionally treated Plaintiffs differently from similarly situated persons who have paid past delinquencies and been allowed to resume irrigation."  Equal Protection Motion at 12.  A. Aragon and M. Aragon identify six cases where the Ditch Association accepted payment for delinquencies from failing to work on Morphy Lake.  See Ditch Association Records, filed August 29, 2011 (Doc. 67-8).[24]  A. Aragon and M. Aragon also argue that the Defendants violated their due process rights by depriving them of their water and ditch rights when they removed L. Sanchez from the ditch rolls, because there is no evidence that the Ditch Association provided L. Sanchez or his successors-in-interest notice or an opportunity to be heard.  See Equal Protection Motion at 21-25.  Finally, A. Aragon and M. Aragon contend that the Ditch Association's actions

_____

[24]The record shows that six persons paid their delinquencies on six different dates from July 1, 1955 through August 5, 1957.

effect an unconstitutional taking of their water and ditch rights, because the Ditch Association's "actions were not authorized, nor reasonably necessary to advance a substantial public purpose." Equal Protection Motion at 25-26.

### A.   THE COURT WILL DENY THE MOTION FOR SUMMARY JUDGMENT ON THE PROCEDURAL DUE-PROCESS AND TAKINGS CLAIMS.

A. Aragon and M. Aragon have not met their initial burden of showing that they are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891 (internal quotation marks omitted). See Celotex Corp. v. Catrett, 477 U.S. at 323. Once the movant meets this burden, rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. at 256; Vitkus v. Beatrice Co., 11 F.3d at 1539. The Defendants have consistently maintained that "the right to use the acequia to irrigate the subject property was abandoned many years ago . . . ." Answer to Complaint and Counterclaim of Defendants, San Jose Ditch Association, Augustine Garcia, Arnold Trujillo and Darrell Herrera ¶ 16 at 5, filed August 20, 2010 (Doc. 10). See Answer to First Amend. Compl. ¶ 17 at 5. In response to the Equal Protection Motion, the Defendants have introduced evidence of the delinquencies L. Sanchez owed and that he was struck from the Ditch Association's membership rolls in 1955, which demonstrates that there is a genuine issue of material fact for trial -- whether L. Sanchez or his estate abandoned his ditch rights in the 1940's or 1950's.

"Abandonment is most usually proved by evidence of the failure of the party charged to use the right, or the water, or to keep the works necessary for the utilization fo the water in repair; and if such nonusage or neglect is continued for an unreasonable period, it may fairly create the

presumption of the intention to abandon." State ex rel. Reynolds v. S. Springs Co., 80 N.M. 144, 146, 452 P.2d 478, 480 (1969)(quoting 2 Kinney on Irrigation and Water Rights, 2012, § 1116 (2d ed. 1912)).   The Supreme Court of New Mexico cited with approval a Colorado decision on abandonment which was "very illuminating" and which stated that the "burden of proof of intent is on him who asserts it."   State ex rel. Reynolds v. S. Springs Co., 80 N.M. at 148, 452 P.2d at 482 (citing Mason v. Hills Land & Cattle Co., 119 Colo. 404, 204 P.2d 153 (1949)).

A. Aragon and M. Aragon do not set forth any facts showing that L. Sanchez did not abandon his ditch rights, for example by showing that L. Sanchez continued to irrigate his property.  See Equal Protection Motion ¶¶ 1-43 at 1-9.  While A. Aragon and M. Aragon could support their motion for summary judgment by producing evidence that L. Sanchez did not abandon his ditch rights, they are not required to do so.  See Celotex Corp. v. Catrett, 477 U.S. at 325 ("[T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case.").  A. Aragon and M. Aragon may meet their burden by showing that there is no evidence that L. Sanchez abandoned his ditch rights.  See Celotex Corp. v. Catrett, 477 U.S. at 325.  To show that the Defendants lack evidence that L. Sanchez abandoned his ditch rights, A. Aragon and M. Aragon must make some reference to the record.  See Celotex Corp. v. Catrett, 477 U.S. at 328 (White, J., concurring)("It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case."); Ashe v. Corley, 992 F.2d 540, 544 (5th Cir. 1993)("[A] mere conclusory statement that the other side has no evidence is not enough to satisfy a movant's burden on summary judgment.").  A. Aragon and M. Aragon note that L. Sanchez died in the mid-1940's, and that the Ditch Association records reflect no

-41-

communications with L. Sanchez or his estate before the Ditch Association removed L. Sanchez' name from the ditch rolls.  See Malicious Abuse of Process Motion ¶¶ 18, 21, 22, at 5.  A. Aragon and M. Aragon have thus met their burden of setting facts showing that L. Sanchez did not abandon his ditch rights.

In response, the Defendants demonstrated that L. Sanchez began accruing delinquencies in 1939 and that, in the 1950's, his land was listed as "no derecho" or "no rights."  Equal Protection Response at 4; 1939-1947 Ditch Records; 1949-1959 Ditch Records; 1955-1961 Ditch Records.  An owner's intention to abandon a ditch right "may be evidenced by acts as well as words."  Sitterly v. Matthews, 129 N.M. at 140, 2 P.3d at 877.  Furthermore, failure to contribute to or neglect of the works necessary for the distribution of water are some of the acts that may support a finding of abandonment.  See State ex rel. Reynolds v. South Springs Co., 80 N.M. at 146, 452 P.2d at 480. A. Aragon and M. Aragon suggest that L. Sanchez did not abandon his ditch rights, because the Ditch Association "has never pursued" "an abandonment proceeding in state court."  Equal Protection Motion at 24.  A. Aragon and M. Aragon do not cite, and the Court did not find, any legal authority for the proposition that a court order is necessary to extinguish an easement.  See Sitterly v. Matthews, 129 N.M. at 140, 2 P.3d at 877 (stating that, to abandon an easement, "the owner must evince a clear and unequivocal intention to do so").  Construing the evidence in the light most favorable to the Defendants, as the nonmoving party, the Court finds that whether the delinquencies reflect L. Sanchez' intent to abandon his ditch rights is a genuine issue of material fact. Hunt v. Cromartie, 526 U.S. at 550-55 (stating that the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party). It may be that at trial, the parties put forth the same evidence of abandonment;

-42-

however, at the summary judgment stage the Court is required to construe the evidence in a light most favorable to the nonmoving party.

To establish a takings claim or procedural due-process claim, A. Aragon and M. Aragon must first establish that they have a right to the property which they assert has been taken.  See Equal Protection Motion at 21 (citing Board of Regents v. Roth, 408 U.S. 564, 568-69 (1972)(stating that the right to procedural due process is violated when a protected property interest is taken)); Equal Protection Motion at 25 (citing Penn Central Transp. Co. v. New York City, 438 U.S. 104 (1978)(stating that a takings occurs when a government actor interferes with property rights)). Consequently, the Court cannot conclude that the Ditch Association effected a taking of his ditch rights or that the Ditch Association violated the procedural due-process rights of L. Sanchez or his successors-in-interest without first determining whether L. Sanchez abandoned his ditch rights.  The Court will deny A. Aragon and M. Aragon's motion for summary judgment on their procedural due-process and takings claims.

### B. THE COURT WILL DENY THE MOTION FOR SUMMARY JUDGMENT ON A. ARAGON AND M. ARAGON'S EQUAL PROTECTION CLAIM.

A. Aragon and M. Aragon assert that they are a "class of one" and that there is no rational basis for the different treatment they have received from similarly situated parciantes.  Equal Protection Motion at 10.   They argue that T. Aragon attempted to pay outstanding ditch delinquencies in 1962.  See Equal Protection Motion at 12; Affidavit of A. Aragon ¶ 4, at 2; Affidavit of A. Trujillo ¶ 3, at 8-9.  A. Aragon and M. Aragon contend that the Ditch Association's records show that Feliciano Aragon incurred penalties associated with the lake from 1942-1950, and the Ditch Association classified him as having "no derecho" or "no right" in 1955 before striking his name from the ditch membership list in 1970.  See Ditch Records (executed 1955), filed August

29, 2011 (Doc. 67-4); Ditch Records (executed 1970 - 1983), filed August 29, 2011 (Doc. 67-5); Equal Protection Motion at 13.  Furthermore, A. Aragon and M. Aragon argue that in 1978, the Ditch Association accepted payment from Felipe Esquibel for Feliciano Aragon's twenty-four years worth of delinquencies, and allowed him to irrigate that tract.  See 1978-1982 Ditch Records; 1942-1950 Delinquencies; Equal Protection Motion at 13.  A. Aragon and M. Aragon assert that it is not uncommon for parciantes, or owners of ditch rights, to have long-term outstanding delinquencies or for the Ditch Association to accept payment on those delinquencies.  See Equal Protection Motion at 12.

The Defendants assert that L. Sanchez abandoned his ditch rights in 1955.  See Equal Protection Response at 4.  They further assert that the Equal Protection Motion relies on "questionable evidence," because there are problems in interpreting the ditch documents considered in the motion.  Equal Protection Response at 6-7.  The Defendants distinguish the ditch rights of other parciantes because: (i) L. Sanchez became delinquent seventy years ago; (ii) L. Sanchez was removed from the ditch records in 1955 not 1970; and (iii) payments were made within eight and twelve years from the absence of the Quintana Brothers and Feliciano Aragon's names from the membership list.  See Equal Protection Response at 8.

The Equal Protection Clause requires that "government must treat like cases alike." Coalition for Equal Rights, Inc. v. Ritter, 517 F.3d 1195, 1199 (10th Cir. 2008)(citation omitted). "In the paradigmatic class-of-one case, a public official inflicts a cost or burden on one person without imposing it on those who are similarly situated in material respects, and does so without any conceivable basis other than a wholly illegitimate motive."  Jicarilla Apache v. Rio Arriba Cnty., 440 F.3d 1202, 1209 (10th Cir. 2006).  Here, A. Aragon and M. Aragon argue that the Ditch

Association treated them as a class of one, because the Ditch Association permitted other delinquent parciantes to pay delinquencies while the Ditch Association did not permit them to pay delinquencies.

An essential element of a class-of-one claim is that a plaintiff "has been intentionally treated differently from others similarly situated." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). As far as the Court can tell, both Feliciano Aragon and the Quintana Brothers owed delinquencies by at least 1955. See 1949-1959 Ditch Records (Doc. 65-16). The Defendants assert that it is not possible to determine the period during which the Quintana Brothers were delinquent. Upon examination of the records provided, the Court was able to determine that it appears that the Quintana Brothers owe some amount as early as 1954; in 1955 it appears they owe $55.00; and in 1956 the Ditch Association terms them as "No D." 1949-1959 Ditch Records. As of 1970, neither Feliciano Aragon nor the Quintana Brothers appear on the ditch membership lists. See Equal Protection Response at 7-8; Ditch Records (executed 1970 - 1981), filed August 29, 2011 (Doc. 67-5). Felipe Esquibel paid $324.20 for the delinquencies of Feliciano Aragon on April 23, 1978 and $310.00 for the delinquencies of the Quintana Brothers on October 4, 1982. 1976-1982 Ditch Records (Doc. 65-20). Felipe Esquibel thus appears to be similarly situated to A. Aragon and M. Aragon from the record before the Court, because he owned land where the original owner of the ditch rights had been delinquent and struck from the ditch membership lists several years earlier. Furthermore, records establish that the Ditch Association permitted others who had accumulated delinquencies in association with Morphy Lake to pay the lake delinquencies only a short period before the Ditch Association denied T. Aragon's request to do the same. See Lista De Delincuencias Del Trabajo de La Laguna; Affidavit of A. Trujillo ¶ 3, at 8-9. The Ditch Association allowed D.

Herrera's predecessor-in-interest Ernesto Herrera to pay a lake delinquency on July 1, 1955 and A. Garcia to pay a lake delinquency on July 7, 1957.  See Lista De Delincuencias Del Trabajo de La Laguna.  If, as the Defendants assert, a deficiency of several years and the Ditch Association's removing a member from the membership lists constitutes abandonment of ditch rights, then the ditch rights of Feliciano Aragon and the Quintana Brothers were also abandoned, and the Ditch Association should not have permitted Felipe Esquibel to pay these delinquencies.

    "Most circuits, including [the Tenth Circuit], have proceeded cautiously in applying the [class of one] theory."  Jicarilla Apache Nation v. Rio Arriba Cnty., 440 F.3d at 1209.  The requirement that a plaintiff show that similarly situated persons were treated differently "is especially important in class-of-one cases."  Jennings v. City of Stillwater, 383 F.3d 1199, 1212 (10th Cir. 2004).  Class-of-one equal-protection challenges turn on comprehensive canvassing of "all possible relevant factors."  Jennings v. City of Stillwater, 383 F.3d at 1214.  The Defendants argue that other parciantes whom the Ditch Association permitted to pay delinquencies were not similarly situated, because: (i) L. Sanchez became delinquent seventy years ago; (ii) the Ditch Association removed L. Sanchez from the ditch records in 1955 and not in 1970; and (iii) the Ditch Association accepted payment on Quintana Brothers and Feliciano Aragon's delinquencies payments within eight and twelve years, respectively, from their names' absence from the membership list.  See Equal Protection Response at 8. Turning to the first point, the Court notes that the first record of L. Sanchez' delinquencies was in 1939 and that the first attempt to pay those delinquencies was in 1962.  See Malicious Abuse of Process Motion ¶ 30, at 7; Malicious Abuse of Process Response ¶ 8, at 3; Affidavit of A. Trujillo ¶ 3, at 8-9 ("After Tony Aragon acquired the property in 1962 he requested permission from the Acequia to irrigate it and pay arrearages, but was

denied . . . .").  Thus, the time frame between the first delinquency and the first attempt to pay is

twenty-three years.  This period is substantially similar to the twenty-four year period that the Ditch

Association admits it permitted for Felipe Esquibel for work on Morphy Lake.  See Equal Protection

Response at 7.  The Defendants are not entitled to rely on the longer period of time to establish the

time frame when it was the Defendants' previous refusal of payment that required A. Aragon and

M. Aragon to offer to pay in 2009.  The Defendants argue, however, that this conclusion relies on

"questionable evidence," because there are problems in interpreting the ditch documents considered

in the motion.  Equal Protection Response at 6-7.  The Court sees no difference between the

documents that A. Aragon and M. Aragon use to establish that the Ditch Association treated

similarly situated persons differently and the documents that the Ditch Association uses to attempt

to establish abandonment.  While recognizing that the Court may not have all the information it

would wish because of the time periods addressed, the Court believes that the documents it has are

sufficiently reliable and finds the Defendants' argument unpersuasive.  Turning to the Defendants'

second distinguishing factor, A. Aragon and M. Aragon argue that the "Defendants do not explain

why Lino Sanchez's removal in 1955 rather than in 1970 is important."  Equal Protection Reply at

7.  The Court agrees.  While the Court recognizes that L. Sanchez was removed at a different time

than the Quintana Brothers and Feliciano Aragon, this distinction does not appear to be a material

difference because these parciantes were in all other respects similar.  See Kan. Penn Gaming, LLC

v. Collins, 656 F.3d 1210, 1218 (10th Cir. 2011)(stating that the requirement is that "comparators

be 'similarly situated in all material respects")(emphasis added).  Finally, the Defendants contend

that the other parciantes made payments within eight and twelve years from the absence of their

names from the membership list.  The Court notes that the situation of A. Aragon and M. Aragon

is no different than these parciantes, because T. Aragon attempted to make payments in 1962, and the Ditch Association denied them.  See Affidavit of A. Trujillo ¶ 3, at 8-9.  The Defendants assert that L. Sanchez and his estate lost ditch rights in 1955.  See Equal Protection Response at 4 ("Lino Sanchez Lost Ditch Rights in 1955").[25]  Thus, the period between the time the Ditch Association maintains that L. Sanchez abandoned his rights and the first recorded attempt to pay the delinquencies is seven years, less than the asserted eight and twelve years for the Quintana Brothers' ditch rights and Feliciano Aragon's ditch rights.  These distinctions thus do not carry much weight and do not offer a rational basis for treating the A. Aragon and M. Aragon's ditch rights differently.

The Defendants also attempt to distinguish the L. Sanchez from other delinquent parciantes because the delinquencies regarding L. Sanchez' 18.6 acre tract included "not only unpaid ditch dues but also uncontributed labor or peons, and unpaid Morphy Lake construction and repair contributions."  Malicious Abuse of Process Response ¶ 9, at 3 (citing Affidavit of A. Trujillo ¶ 5, at 5).  A. Aragon and M. Aragon argue that A. Trujillo's affidavit is not supported by specific evidence or personal knowledge.  See Malicious Abuse of Process Reply ¶ 29, at 5.  A. Aragon and M. Aragon also assert that the Eric Romero Report[26] is inadmissible hearsay and incomplete.

---

[25]At the pretrial conference held on November 21, 2011, the parties submitted a joint Pretrial Order discussing the parties arguments, stipulated facts, and potential witnesses.  In the Pretrial Order the Defendants state that "Plaintiffs' predecessor, Lino Sanchez abandoned his ditch rights and water rights to subject the 18.6 acre tract many decades ago, prior to 1939."  Pretrial Order ¶ 2(c), at 16.  This statement contradicts the Defendants assertion in the Equal Protection Response, that L. Sanchez lost his ditch rights in 1955 when he was struck from the Ditch Association's membership rolls.  See Equal Protection Response at 4.  The conflict between the Defendants' assertion in the Pretrial Order and in the Equal Protection Response further bolsters the Court's conclusion that there is genuine issue of material fact as to whether L. Sanchez abandoned his ditch rights and whether L. Sanchez was similarly situated to the Quintana Brothers and Feliciano Esquibel.

[26]In the parties Pretrial Order, the Ditch Association listed Dr. Eric Romero as a potential witness, who would testify about his translation and interpretation of acequia records as summarized

See Malicious Abuse of Process Reply ¶ 29, at 5.  The Court agrees that the Ditch Association's Eric

Romero Report is inadmissible because it contains unsworn statements. See Sigler v. Amer. Honda

Motor Co., 532 F.3d 469, 480-81 (6th Cir. 2008)(holding that the district court improperly

considered three unsworn expert reports when ruling on a motion for summary judgment); Magoffe

v. JLG Industries, Inc., No. 06-0973, 2008 WL 2967653, at *8 (D.N.M. May 7, 2008)(Armijo,

J.)("As a procedural matter, the Court notes that Defendant JLG's motion attaches expert reports

containing unsworn statements which . . . cannot be considered by a district court in ruling on a

summary judgment motion.").  The Court does not agree, however, that A. Trujillo lacks personal

knowledge of the L. Sanchez delinquencies.  See Told v. Tig Premier Ins. Co., 149 F.App'x 722,

725-26 (10th Cir. 2005)(unpublished)("[G]enerally Rule 56(e)'s requirements of personal

knowledge and competence to testify may be inferred if it is clear from the context of the affiant is

testifying from personal knowledge.").[27]  A. Aragon and M. Aragon assert that the Quintana

Brothers' and Feliciano Aragon's ditch delinquencies were in connection with the ditch, lake, and

river, but do not specify whether the delinquencies were for ditch dues, peons, construction and

---

in his report. While the Defendants do not specifically state that they are calling Dr. Romero as an
expert witness, it appears, from the inclusion of his resume and qualifications in the Malicious
Abuse of Process Response, that they intend to call him as such.

   [27]A. Trujillo is the Ditch Association's Treasurer and a Commissioner. A. Trujillo's affidavit
asserts that he has personally dealt with A. Aragon, M. Aragon, and T. Aragon regarding this matter.
See Affidavit of A. Trujillo ¶ 2, at 8.  While A. Trujillo does not give the source of his information,
as the Ditch Association's Treasurer, a Ditch Association Commissioner, and as someone who has
been personally involved in this dispute, A. Trujillo would have had personal knowledge of the
records documenting the delinquencies here.  See See Bryant v. Farmers Ins. Exchange, 432 F.3d
1114, 1123 (10th Cir. 2005)("Although Bryant does not give the source of her allegations, as
supervisor of the RPI department, Bryant would have had personal knowledge of the fact that the
audits were never intended to be used to dismiss employees . . . .").  Furthermore, the failure of an
affiant to "state that the statements therein were based on personal knowledge does not prevent that
affidavit from being properly considered."  Roberts v. Cessna Aircraft Co., 289 F.App'x 321, 324
(10th Cir. 2008)(emphasis original).

repair costs.  See Equal Protection Motion at 13.  The Court is unable to discern whether the Quintana Brothers' and Feliciano Aragon's ditch delinquencies were also for ditch dues, peons, construction, and repair costs.  The Court recognizes that what the reason is for the delinquency assessment may be a fine line to draw between the Quintana Brothers or Feliciano Aragon, and L. Sanchez.  The Tenth Circuit, however, has emphasized its "strict reading" of class-of-one claims and that there is a "substantial burden" to demonstrate that comparator individuals are "similarly situated in all material respects."  Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1217-18 (10th Cir. 2011)(emphasis added).  The Defendants have thus raised a genuine issue of material fact whether the Ditch Association assessed the Quintana Brothers', Feliciano Aragon's, and L. Sanchez' delinquencies for essentially the same purpose.  Because the Court must resolve all disputes in favor of the nonmoving party, see Hunt v. Cromartie, 526 U.S. at 551, the Court will deny A. Aragon and M. Aragon's motion on the equal-protection claim.

Accordingly, the Court will deny A. Aragon and M. Aragon's  summary judgment on the equal-protection claim.

## III.  THE COURT WILL DENY THE DEFENDANTS' MOTION TO DISMISS A. GARCIA, A. TRUJILLO, AND D. HERRERA IN THEIR INDIVIDUAL CAPACITIES.

The Defendants seek summary judgment in favor of A. Garcia, A. Trujillo and D. Herrera in their individual capacities based on the doctrine of qualified immunity.  See Qualified Immunity Motion at 1.  The Individual Defendants contend that they did not violate any "clearly established statutory or constitutional rights of which  a reasonable government official would have known," because they were acting "in conformity with former ditch association commissions and have upheld those former decisions which determined that the right to use the acequia for the subject property

was abandoned many decades ago." Qualified Immunity Motion at 3. <u>See</u> Qualified Immunity Memorandum at 3-4 (indicating that the Defendants' actions were based in part on their belief that L. Sanchez had abandoned his ditch easement). A. Aragon and M. Aragon do not agree that L. Sanchez abandoned his ditch easement, and point out that "the record is devoid of any evidence of any 'former decisions [that L. Sanchez abandoned his ditch easement]' (if such decisions were indeed ever made)." Qualified Immunity Response at 7.

The Individual Defendants base their qualified immunity motion, as it relates to the procedural due-process and takings claims, on a disputed issue of material fact -- whether L. Sanchez abandoned his ditch easement. The Court cannot determine whether to grant summary judgment in favor of the Individual Defendants based on qualified immunity with the facts currently before it, because such a determination will turn on which version of the facts the Court accepts. The Court will deny at this time the Individual Defendants' Qualified Immunity Motion with respect to the procedural due-process and takings claims. The Individual Defendants may move for dismissal on qualified immunity grounds at the close of the trial. <u>See</u> <u>Gonzales v. Duran</u>, 590 F.3d 855, 859 (10th Cir. 2009)("[T]he predicate for submitting a qualified immunity question to the jury is the existence of disputed issues of material fact -- that is, the question of what actually happened.").

As to the equal-protection claim, the Court will also deny the Qualified Immunity Motion at this time. Neither the Qualified Immunity Motion nor the Qualified Immunity Reply make any argument with respect to equal protection. Their motion relies solely on the fact that L. Sanchez abandoned his ditch rights in the 1950's. <u>See</u> Qualified Immunity Motion at 1-3. While the Court has not yet determined whether the Defendants violated the Equal Protection Clause, the Individual

Defendants do not argue in their Motion for Qualified Immunity that A. Aragon and M. Aragon did not establish an equal protection claim or that the Individual Defendants would be entitled to qualified immunity for the class-of-one equal protection claim.  See Terpening v. Brett, 222 F.Supp.2d 1135, 1138 n.2 (C.D. Ill. 2002)("Terpening has not tendered this argument, and the Court is not required to make his arguments for him.")(citing Friedel v. City of Madison, 832 F.2d 965, 969 (7th Cir. 1987)).[28]  The Supreme Court recognized class-of-one equal-protection claims in 2000.  See Village of Willowbrook v. Olech, 528 U.S. at 564. Because there is a genuine issue of material fact, however, necessary to determine whether a constitutional violation took place, the Court cannot determine whether to grant summary judgment in favor of the Individual Defendants based on qualified immunity with the facts currently before it.  Accordingly, the Court will, at this time, deny the Qualified Immunity Motion as it relates to the Equal Protection claim.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion for Summary Judgment on Defendants' Counterclaim for Malicious Abuse of Process is granted; (ii) the Plaintiffs' Motion for Summary Judgment on Plaintiffs' Equal Protection, Due Process and Takings Claims is denied; and (iii) the Defendants' Motion to Dismiss Augustin Garcia, Arnold Trujillo and Darrell Herrera in their Individual Capacities is denied.

_____
UNITED STATES DISTRICT JUDGE

---

[28]The Court does not rely on the Defendants lack of argument in denying summary judgment on the Qualified Immunity Motion as it relates to the equal-protection claim.  The Court does note, however, that the Defendants did no more than make a blanket assertion of qualified immunity on all claims and did not make any arguments directed at the equal-protection claim.

*Counsel*:

Mary E. Humphrey
Connie Ode
Humphrey & Ode, P.C.
El Prado, New Mexico

     *Attorneys for the Plaintiffs*

Peter Thomas White
Santa Fe, New Mexico

*-- and --*

Fred J. Waltz
Taos, New Mexico

     *Attorneys for the Defendants*